**AYERS v. HOAGE, Deputy Commissioner, et al.**

**No. 5615.**

Court of Appeals of the District of Columbia.

Argued Jan. 5, 1933.

Decided Jan. 30, 1933.

Rehearing Denied Feb. 16, 1933.

Francis J. Stoegerer and Benjamin Prager, both of Washington, D. C., for appellant.

Leo A. Rover, Edwin A. Swingle, and Ernest A. Swingle, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

ROBB, Associate Justice.

From 1925 to some time in January, 1931, appellant was employed in Langmead's Arm Chair Lunch in the District. He was found to be suffering from tuberculosis, and filed a claim for compensation with the deputy commissioner under the provisions of the Longshoremen's and Harbor Workers' Compensa-

tion Act of March 4, 1927 (44 Stat. 1424, U. S. C. Supp. VI, title 33, c. 18, §§ 901–950 [33 USCA §§ 901–950]), made generally applicable to the District of Columbia by the Act of May 17, 1928 (45 Stat. 600, D. C. Code, title 19, c. 2, §§ 11, 12 [33 USCA § 901 note]).

After extended hearings, the deputy commissioner rejected the claim, for the following reasons, among others: (a) That the claimant had failed to establish that he sustained an accidental injury arising out of and in the course of his employment, or that the disease from which he was suffering was such occupational disease or infection as arose naturally out of such employment; (b) that it was not proven that the condition from which the claimant was suffering "was the result of an activation, aggravation, or acceleration of a pre-existing condition due to the employment in which he was engaged." Thereupon this bill was filed to set aside the finding of the deputy commissioner as being "not in accordance with law."

During the years 1925, 1926, and 1927, appellant lived in the same house with his sister, who was then suffering from tuberculosis. In the middle of January, 1931, appellant contracted a severe cold from a source unknown to him. He worked long hours in the restaurant, and ate at irregular hours. In 1928 he was examined by a doctor, who told him that his tonsils were infected and should be removed. The operation was not performed. From February 8, to April 30, 1931, appellant was treated by Dr. Walters, who had been in general practice since 1928. The doctor testified that appellant was then suffering from tuberculosis; that a bad cold would break down the system and act as an accelerant; that there are many other predisposing factors; that long hours, continual exposure to draughts, irregular meals, etc., might be contributing factors in breaking down resistance. The doctor had treated 12 cases of tuberculosis in a year. There was no testimony that appellant contracted tuberculosis at the lunchroom, nor was there any testimony that any person or patron in the lunchroom had tuberculosis.

Dr. Tewksbury testified as an expert in tubercular cases. The doctor had served for 10 years as superintendent of the Tuberculosis Hospital; was also physician in charge of the tuberculosis clinic in Washington for 10 years. About 40,000 cases of tuberculosis had been under his supervision. The doctor expressed the opinion that it is possible for any one at any place, at any time, from contact with an object handled by any one suffering from tuberculosis to contract the disease; that the disease may be spread through the use of drinking glasses, towels, nail brushes, combs, and hair brushes; also through coins, paper money, and improperly washed knives, forks, dishes, and the like; that he had not found that tuberculosis was a disease peculiarly common to restaurant workers or to people waiting on tables; on the contrary, he had had only a few cases of people engaged in restaurant work; that drinking fountains, moving picture shows, churches, and anywhere people congregate in large numbers are sources; that there is no way of proving definitely where an individual contracts tuberculosis. During the testimony of this witness, appellant's counsel announced that he did not claim appellant contracted tuberculosis as a result of his work in the restaurant, but claimed he contracted it by contact with the dishes, etc., and that it was accelerated and aggravated by the working conditions.

An injury "arises out of" the employment within the meaning of the Compensation Act when it occurs in the course of the employment and as the result of a risk involved in or incidental to the employment or to the conditions under which it is required to be performed. The mere fact that the injury is contemporaneous or coincident with the employment is not a sufficient basis for an award. Indemnity Insurance Co. of North America v. Hoage, 61 App. D. C. 173, 58 F. (2d) 1074, 60 Wash. Law Rep. 450; Madore v. New Departure Mfg. Co., 104 Conn. 709, 134 A. 259, 261. In the Madore Case the court said: "Before he can make a valid award, the trier must determine that there is a direct causal connection between the injury whether it be the result of accident or disease, and the employment. The question he must answer is: Was the employment a proximate cause of the disablement, or was the injured condition merely contemporaneous or coincident with the employment? If it was the latter, there can be no award made."

In our view, the finding of the deputy commissioner was fully justified by the evidence; was neither arbitrary nor capricious; and was, therefore, "in accordance with law." It conclusively appeared that tuberculosis is not peculiarly common to restaurant workers, and that the disease may be contracted in any place frequented by the public. To hold that there was a causal connection between the dis-

ease and the employment would be to indulge in conjecture.

The decree dismissing the bill is affirmed.

Affirmed.