### LIBERTY MUT. INS. CO. v. HOAGE, Deputy Com'r, et al.
### No. 5790.

Court of Appeals of the District of Columbia.
Argued May 8, 1933.
Decided May 29, 1933.

Arthur J. Phelan, of Washington, D. C., for appellant.

Marvin F. Bischoff, of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

Richard Smith, a colored man, died September 22, 1931, at Freedman's Hospital in Washington. A few hours prior to his death he was working as a laborer for a building contractor engaged in the erection of Roosevelt High School. His widow applied for compensation (Longshoremen's and Harbor Workers' Compensation Act of March 4, 1927, title 33 USCA, chapter 18, §§ 901–950, made applicable in the District of Columbia by Act May 17, 1928, 45 Stat. 600, c. 612; § 1, D. C. Code, 1929, tit. 19, § 11 [33 USCA § 901 note]), and the Deputy Commissioner, after hearing, made an award. Appellant, the insurance carrier, filed its bill of complaint in the lower court to set aside the award. Appellees filed motions to dismiss. The motions were sustained, and this appeal taken.

The findings of fact by the Deputy Commissioner as to the cause of death are as follows:

"That on said date the employee above named, while in the employ of the employer above named, as a laborer, 'sustained personal injury which arose out of and occurred in the course of his employment and resulted in his death on the same date'; that while so employed and engaged in loading and pushing a wheel barrow handling brick for the construction of a building; that the maximum temperature for that day was 97 degrees Fahrenheit, the minimum, 75 degrees Fahrenheit, and the mean, 85 degrees Fahrenheit, the departure from the normal temperature for the day being 19 degrees; that on the said date the employee suffered heat exhaustion, and as a result thereof he died on the same date at Freedman's Hospital."

■ The grounds on which we are asked to set aside the Deputy Commissioner's award are: First, that there was no substantial evidence in the record upon which such a finding could be based; and, second, no evidence that the deceased suffered injury arising out of his employment within the meaning of the act. The Deputy Commissioner's findings are far from satisfactory. By reference to the quoted part it will be seen that he goes no farther than to say the day was abnormally hot and that deceased, while at work, suffered heat exhaustion from which he died. There is a complete absence of stated facts to support the conclusion or to enable us to determine whether the decision is in accordance with law. See Howard v. Monahan (D. C.) 33 F.(2d) 220. We must, therefore, have recourse to the evidence taken before the Deputy Commissioner to determine if it is sufficient to sustain the award.

■ There can no longer be any controversy as to the correctness of the rule that an award not supported by evidence is not in accordance with law, and so we have several times said in similar circumstances that our duty is to determine from the record whether the evidence given before the Deputy Commissioner will sustain his finding. See Fidelity & Casualty Co. v. Burris, 61 App. D. C. 228, 59 F.(2d) 1042; Lumbermen's Mut. Cas. Co. v. Hoage, 61 App. D. C. 171, 58 F. (2d) 1072. In reaching a decision in this respect we have likewise said that where there is doubt it should be resolved in favor of the injured employee or his dependent family. See Fidelity & Casualty Co. v. Burris, supra. In this case, however, in order to sustain the Deputy Commissioner, we should be required, if we are frank, to go to the extent of saying that the law makes the employer an absolute insurer. This we may not say without doing violence to the provisions as well as the spirit of the act.

The testimony offered in behalf of claimant is as follows: Deceased was taken ill between 11:15 and 11:30 a. m. while working as a laborer in the construction of a building. His job was to load a wheelbarrow with brick, to roll it from the brick pile, in a comparatively shaded place, about a hundred feet or less to a cage or hoist, which lifted it to the part of the building where the brick were to be used. The interval during which the wheelbarrow was being hoisted to the place of work and its return was five or six minutes, during which deceased waited, without having anything else to do, for its return. The day was hot, the temperature being 91 at 11, but the work in which he was engaged was carried on between the wings of two buildings which were open in all directions so that there were air passages at all times. No one else sustained injury on account of the heat, and the conditions surrounding the work were not unlike those to which the entire community—engaged in manual labor—was exposed. But around 11:15 deceased "grabbed his two legs as though he was in cramps." He rested for a while, but got worse rather than better, was removed to the hospital in a comatose condition, and died at 5 o'clock in the afternoon without regaining consciousness. A young interne at the hospital saw deceased when he was brought there, but made only a cursory examination of his condition. He heard deceased complain of cramps in his arms and legs, and found his temperature subnormal and his clothes wet with perspiration. Asked by the Deputy Commissioner to express an opinion as to the cause of death, he stated it was impossible to tell the primary cause of death without an autopsy, but he thought the predisposing cause was "heat cramps." The testimony of this witness, taken as a whole, is clearly without probative value, not only because of professional inexperience, but likewise because he had by his own statement no opportunity of making such an examination as would qualify him to express an opinion. Another doctor from the hospital was examined, but he had never seen deceased at any time and the extent of his testimony was that "the history of the case" showed deceased was exposed to excessive heat and came to the hospital with heat exhaustion, but the history of the case that he referred to was not his-

tory at all but just the statement of the District fireman who attended the ambulance in which deceased was taken to the hospital. Other than this medical evidence and the government heat reports, there was nothing shown to prove or tend to prove the cause of death.

On the other hand, Dr. Hunter, a well-known pathologist of Washington, testified that he was brought into the case by being asked by the District coroner to make a pathological and microscopic examination of tissues removed by the coroner at the autopsy from the body of deceased, in order to enable the coroner to make a correct record of the cause of death. Dr. Hunter was in the first place a disinterested witness, in the second place a witness whose medical knowledge and experience gave weight to his opinions, and in the third place was obviously alone in a position to determine definitely the cause of death. He testified that his examination showed deceased had chronic kidney disease, chronic liver disease, and chronic heart disease, and that he died with an edema of his lungs resulting from congested heart failure. He testified the pathological findings in heat stroke are distinct from those found in congestive heart cases, and that his examination in the instant case clearly distinguished the case as coming under the latter and not under the former designation. His conclusion was that heat stroke had nothing to do with the death of deceased. On cross-examination he was asked whether his examination did not disclose symptoms consistent with heat stroke, and he replied, "I found dilatation of the veins from the heart failure, but the features of heat stroke that you are speaking of I did not find present in this case." Again on cross-examination he was asked if the conditions he found could not have been caused by heat stroke, and he replied his purpose in making the pathological and microscopic examination was to test the accuracy of the symptoms of heat prostration, that it was for this purpose the coroner had sent the tissues to him, and that the tests made showed the heat did not cause the illness and death. He summed up his evidence in the statement that there was nothing shown in the examination to justify attributing the cause of death to heat stroke, but unmistakable evidence from which to attribute it to disease and to that alone.

■ And so we have a case of a man in apparent good health, while at work on a hot day, suddenly falling out with cramps, becoming immediately unconscious, and dying within a few hours, and we are asked to approve a compensation award based on these facts alone. Perhaps, if this were all, we should be disposed, in compliance with the purpose of the act, to place the burden on the industry rather than the laborer and indulge the presumption provided in section 20 of the act (33 USCA § 920), to justify our saying that from these facts an inference of death from the employment arose, but where, as is the case here, there is other evidence of a positive nature, and wholly uncontradicted, which definitely and conclusively traces the cause of death and places it wholly at the door of a fatal disease from which the employee was suffering, and wholly away from any relation to the work, then, in such a case, the inference we might otherwise indulge must yield to the actual, and the Deputy Commissioner's determination must be set aside.

Reversed.