**SPEAKS v. HOAGE, Deputy Com'r, et al.***

No. 6389.

United States Court of Appeals for the District of Columbia.

Argued April 9, 1935.

Decided May 6, 1935.

*Writ of certiorari denied 56 S. Ct. 121, 80 L. Ed. —.

I. Irwin Bolotin and Charles I. Kaplan, both of Washington, D. C., for appellant.

Arthur J. Phelan, of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

## MARTIN, Chief Justice.

This is a case arising under the Longshoremen's and Harbor Workers' Compensation Act (44 Stat. 1424; 33 USCA §§ 901–950 [made applicable to the District of Columbia 45 Stat. 600; D. C. Code (1929) tit. 19, c. 2, §§ 11, 12]).

The deputy commissioner rejected the claim for compensation in the case. Appellant, as plaintiff, then brought suit in the lower court to set aside the deputy commissioner's ruling. The lower court denied the plaintiff's prayer, whereupon this appeal was taken.

It appears from the record that on January 17, 1934, Harvey Speaks was an employee of the National Capital Press, Inc.; that on that day he was sent by one of his superiors to a gasoline station to get a five-gallon can filled with gasoline. He went on the errand, had the can filled, and brought it back to his place of employment. The can weighed between 30 and 35 pounds, and the distance which Speaks carried it was about 240 feet. Speaks apparently after bringing the can back, put it upon an electrically controlled elevator which he operated himself, and brought the elevator up to the third floor. He took the can off the elevator, set it down upon the floor within a few feet of the elevator shaft after closing the elevator door behind him, and afterwards was found lying upon the floor apparently suffering great pain. These facts are practically undisputed although no one saw Speaks while bringing the gasoline from the filling station, nor while he was on the elevator, nor after he got off the elevator until he was found lying upon the floor near to the can. A doctor was called who examined him and ordered his removal to the hospital, which was done. Speaks remained in the hospital for two days. On the 19th he died. An autopsy was performed on his body by Dr. Murphy, the deputy coroner.

It is claimed by appellant that the physical effort made by Speaks in carrying the can of gasoline subjected his heart to a strain which was a contributing cause of his death; and that the injury was accidental and occurred in the course of and grew out of his employment and was compensable.

The deputy commissioner, however, found upon the evidence that Speaks was suffering from a long-standing disease of the heart; that his death was caused by this disease; and that the evidence failed to establish that he suffered sufficient strain while at work to bring about the acute condition of the heart which caused his death.

The question therefore arose whether the death of the employee was caused by an attack of heart disease brought on in whole or in part by the strain of carrying the can of gasoline, or whether the heart attack was coincidental with but not caused by that exertion.

It is disclosed by the record that Speaks was about 45 years of age. His wife testified that he was possessed of good health, and that on the morning of January 17

he left for his work without complaining of any illness. On the other hand, it appears by the testimony of the coroner that Speaks' body exhibited evidence of subcutaneous medication of the left side.

The autopsy was performed by Dr. Murphy, the deputy coroner, who testified that there were no marks of violence or evidence of trauma or injury to the body, but that on opening the abdomen and chest of the deceased he found that deceased had plastic or sticking adhesions to the right auricle and aorta; that there was an exudate purulent in character; that there was septic pericarditis, which is an infected involvement of the pericardium, this being the outside lining of the heart; that there was marked distention of the intraventricular blood vessels between the right and left blood chambers of the heart; that the left lung was collapsed and there was venous engorgement of both lungs. He found that the patient had a fixed pericardium with numerous plaques about the heart; that the right heart was dilated markedly; that there was advanced, thickened, sloughing, degenerated aortitis, which is an advanced inflammation of the arch of the aorta; that the spleen was diseased showing a free or hyperactivity, and was markedly enlarged, showing marked engorgement of the blood vessels. The liver showed advanced cirrhosis, which was purple in color, corrugated throughout. And finally that the cause of death was a cardial renal hepatic disease; that is, a disease of the heart, kidneys, and liver, advanced in type, associated with the terminal condition of an acute cardiac dilatation.

When asked whether or not in his opinion the action of the deceased in carrying the can of gasoline precipitated the acute onset which resulted in his death, the doctor said: "Mr. Hoage, I can't answer that that way. We have numerous occasions, and I am talking from experience on autopsies, where people's hearts were not as bad as his will die in bed where they are under no exertion." The doctor stated that there was a diseased condition of the heart sufficient to cause such dilatation without any exertion whatsoever. When asked if there was any evidence of immediate strain he replied: "None, because of the fact that, I say, he had a sloughing condition in his heart. He had a pericarditis which is not due to injury but is just a natural existing thing from some effects of infection of the deposits in the heart setting up a pericar-

ditis. In other words, the man was dead walking around." When asked if he found sufficient evidence that there could have been death at any moment, he replied: "Yes. Whether this additional strain had anything to do with hastening the termination, I don't know how I could tell that because of the fact that the heart was in such bad condition at the time of the autopsy." The doctor stated that there was some doubt in his mind as to whether or not the onset was precipitated by strain, but that he had no doubt that there was sufficient disease involvement to precipitate the onset of a heart attack. The witness added, "that the one is speculative and the other is certain." He stated also that the conditions as he found them were of long standing and whether the acute dilatation was brought on by exertion or whether it was a terminal thing as a result of the diseased condition there was no way that he could answer that.

However, it appears from Dr. Murphy's testimony that the immediate cause of the employee's death was an acute dilatation of his heart which could not have existed at the time when he was found upon the floor and was taken to the hospital; that if it had developed at the time when he was found, it would have caused his death at that time, and not two days later; that the cause of his death was a terminal condition that developed immediately before death.

The doctor was asked: "Assuming that there was a dilatation found at the time when Speaks was carrying the gasoline, would you say that that lifting and carrying affected or aggravated his acute dilatation?" To which he answered: "No, sir; because of the fact that if he had an acute dilatation at that time he would not have lived for two days more. He would have died at that time."

The testimony of Dr. Murphy was corroborated by that of Dr. Cohen, who saw the deceased while on the floor where he lay and ordered him to be taken to the hospital, and who saw him once while in the hospital. Upon an examination of the records of the hospital and the autopsy report of Dr. Murphy the witness said: "Inasmuch as this man died of cardiac failure superimposed upon the longstanding cardiac disease I believe that the attack was coincidental with and not caused by his work or anything he might have been doing while at work."

To the same effect was the testimony of Dr. E. A. Cafritz, who treated Speaks while he was at Emergency Hospital. The doctor stated as his conclusion that: "The autopsy findings of this patient reveal that he had been suffering with an old cardio-vascular-hepatic disease with a superimposed cardiac dilatation and purulent pericarditis and septicemia. There is no evidence of injury and it is evident that this attack was not the result of his work but coincidental with it." The doctor then stated: "I think to put it a good way would be to say this was more or less a coincidence rather than an accidental thing or a causal thing." In testifying further, Dr. Cafritz said: "Dr. Murphy's findings would indicate that this man suffered over a long period of time from a chronic heart condition. * * * When you get a heart sloughing in character it does not take a great deal of—anything may happen. The patient may be standing on his feet and die. He may walk up and make a step or he may do anything at all. He may be found in bed dead. It does not require any exertion at all with the condition as described in this report."

The record contains also the testimony of Dr. Simmons and Dr. Jackson, both of whom were called by the claimant. Both testified that in their opinion the effort made by the employee in lifting and carrying the can of gasoline brought on the heart attack which resulted in his death.

▬ Upon this record we think the court should not disturb the conclusion reached by the deputy commissioner. The rule in such cases is well expressed in Ayers v. Hoage, 61 App. D. C. 388, 63 F.(2d) 364, as follows: "An injury 'arises out of' the employment within the meaning of the Compensation Act when it occurs in the course of the employment and as the result of a risk involved in or incidental to the employment or to the conditions under which it is required to be performed. The mere fact that the injury is contemporaneous or coincident with the employment is not a sufficient basis for an award. Indemnity Insurance Co. of North America v. Hoage, 61 App. D. C. 109, 58 F.(2d) 1074, 60 W. L. R. 450; Madore v. New Departure Mfg. Co., 104 Conn. 709, 134 A.

259, 261. In the Madore Case the court said: 'Before he can make a valid award, the trier must determine that there is a direct causal connection between the injury whether it be the result of accident or disease, and the employment. The question he must answer is: Was the employment a proximate cause of the disablement, or was the injured condition merely contemporaneous or coincident with the employment? If it was the latter, there can be no award made.' "

In Fulton v. Hoage, 64 App. D. C. 232, 77 F.(2d) 110, we said: "It is well established that the findings of the Deputy Commissioner upon the facts in such a case are final and conclusive when supported by competent evidence. The act does not authorize the court to reweigh the evidence when more than one inference can be drawn for the purpose of arriving at a different conclusion from the Deputy Commissioner. Crowell v. Benson, 285 U. S. 22, 52 S. Ct. 285, 76 L. Ed. 598; Voehl v. Indemnity Ins. Co., 288 U. S. 162, 53 S. Ct. 380, 77 L. Ed. 676, 87 A. L. R. 245; Powell v. Hoage, 61 App. D. C. 99, 57 F.(2d) 766; New Amsterdam Casualty Co. v. Hoage, 61 App. D. C. 306, 62 F.(2d) 468; Hoage v. Employers' Liability Assurance Corporation, 62 App. D. C. 77, 64 F.(2d) 715."

In Powell v. Hoage, 61 App. D. C. 99, 57 F.(2d) 766, 767, we said: "We therefore reach the conclusion that the cases in which we may set aside an order of the Commissioner as 'not in accordance with law' are only those in which it appears that there is an error of law, or in which the order of the Commissioner is not supported by substantial evidence, as well, of course, in those in which it is arbitrary and unreasonable. If the finding, however, is supported by substantial evidence, it is final."

In the present case we think that there is substantial evidence tending to prove that the death of the employee resulted from an acute attack of a long standing and fatal heart disease and that the onset was not caused in whole or in part by any work performed by him.

The decree of the lower court is affirmed.

Affirmed.