**HOAGE, Deputy Commissioner, et al. v.
LIBERTY MUT. INS. CO.**

No. 6411.

United States Court of Appeals for the District of Columbia.

Argued May 10, 1935.

Decided June 17, 1935.

HITZ, Associate Justice, dissenting.

◆

See, also, 62 App. D. C. 822, 65 F.(2d) 822.

George G. McLeish, of Washington, D. C., for appellants.

Arthur J. Phelan, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

ROBB, Associate Justice.

Appeal from a decree in the Supreme Court of the District in an equity proceeding under the District of Columbia Workmen's Compensation Law[1] overruling the motion of defendant (claimant), appellant Smith, to set aside a decree pro confesso against her and declaring the decree absolute, and also finally setting aside a compensation award to her by the Deputy Commissioner and enjoining her from attempting to enforce it.

On July 17, 1933, Henry Smith, a laborer employed by the Lake Stone Company, paving contractor, in the District, while engaged in patch work on the streets had been using a heavy sledge hammer for about an hour breaking concrete, when he collapsed and died from acute dilatation of the heart. His widow claimed compensation under the Workmen's Compensation Law, and the Deputy Commissioner, after a hearing on January 4, 1934, found that the deceased employee "sustained personal injury which arose out of and occurred in the course of his employment," and on January 24, 1934, awarded compensation to the widow, appellant Bessie Smith.

Thereafter, on February 21, 1934, appellee insurance carrier by bill in equity in the court below against the Deputy Commissioner and Bessie Smith, as defendants, sought an injunction to restrain the enforcement of the award. The transcript of the hearing before the Deputy Commissioner was attached to and made a part of the bill.

On March 13, the defendants Hoage and Smith jointly filed a motion to dismiss the bill, and on May 2, after hearing, the motion was overruled and the defendant Hoage, by an injunction pendente lite, was restrained from enforcing the award.

[1] Longshoremen's and Harbor Workers' Compensation Act (chapter 509, 44 Stat. 1424, as amended by the Act of May 26, 1934, c. 354, 48 Stat. 806; 33 U. S. C. § 901 et seq. (33 USCA § 901 et seq.), made applicable to the District of Columbia as a workmen's compensation law by the Act of May 17, 1928 (chapter 612, 45 Stat. 600; D. C. Code, 1929, title 19, §§ 11, 12).

Thereafter, on May 5, 1934, the plaintiff and the defendant Hoage, by written stipulation, agreed to extend to May 28 the time within which the defendant Hoage might file an answer or plead further. It is conceded that defendant Hoage elected to stand on his motion to dismiss.

On June 7 following, the court, on the bill, the defendants' motion to dismiss, and the transcript of the hearing before the Deputy Commissioner, found that the award was "not in accordance with law," and, it appearing that the defendant Bessie Smith had "failed to file an answer or other pleading to said bill of complaint within the time prescribed" by law, entered a decree pro confesso against her "for want of answer or other defense." On the same day the court, declaring that defendant Hoage having elected to stand on his motion to dismiss, and the award being "not in accordance with law," entered a separate decree "finally and wholly" suspending and setting aside the award and permanently enjoining defendant Hoage from enforcing it. No appeal was taken by either defendant from the decrees of June 7.

On June 11 defendant Smith filed a paper entitled "Answer of Bessie Smith to the bill."

On June 14 defendant Smith filed a motion to set aside the decree pro confesso, and in support thereof her counsel filed an affidavit stating that he had been taken ill while preparing her answer, and that although associate counsel had assured him that he would seek a second extension of time for filing her answer he had failed to do so.

On November 10, 1934, the motion to set aside the decree pro confesso was, after hearing, overruled; sufficient cause not having been shown "to warrant the setting aside of the order or decree pro confesso."

On November 12, after reciting that on June 7, 1934, a decree pro confesso against defendant Smith had been entered for failure to answer the bill within the time prescribed by law, that her motion to set aside the decree pro confesso had theretofore been overruled, and that "more than thirty days having elapsed since the entry of said order or decree pro confesso, it is now deemed absolute," the court decreed that the compensation award of defendant Hoage "is hereby finally and wholly suspended and set aside, and the said Bessie Smith is permanently enjoined from enforcing or attempting to enforce said award."

On November 28, 1934, it appearing that the defendant Smith, by her attorney, "who, on her behalf and on behalf of Robert J. Hoage, Deputy Commissioner, * * * notes an appeal * * * from the final decree in this cause, dated November 12, 1934," the court entered an order allowing the appeal and fixing the undertaking on appeal.

Appellee by its motion in this court to strike the name of Robert J. Hoage, Deputy Commissioner, as a party appellant, and by a further motion to dismiss the appeal of appellant Bessie Smith, has raised procedural questions; but, since we agree with the lower court on the merits, we prefer to place our decision on that ground, and, therefore, express no opinion on the procedural questions presented.

At the hearing before the Deputy Commissioner the testimony regarding the cause of Smith's death was given by two physicians. The first, Dr. Murphy, deputy coroner for the District, testified on behalf of the claimant that at the District morgue he made a post mortem examination of Smith, who was about 30 years old, about five feet nine inches in height, and weighed 165 pounds. "Both lungs were bound down. His heart was a beefy heart, markedly hypertrophied. The aorta was hemorrhagic throughout, with two areas perforated—almost perforated; that is, his ulcerations were thinned out in the center and it would not take much strain to puncture one. The heart was dilated. His kidneys showed evidences of advanced Bright's disease. His liver was cirrhotic; that is, hardened. The abdominal and chest organs were negative. The cause of his death was cardio-renal disease. By cardio-renal is meant an accumulation of disease in the heart and the kidneys that had been of long standing." The doctor was asked whether there was any indication in the post mortem of extreme strain or rupture or trauma of any kind, and gave the following answer: "There was no evidence of any trauma. There was no evidence of extreme strain other than he died from acute dilation of his heart. Acute dilation of the heart in a man with a heart in that condition in which his was—the slightest exertion may cause him to have acute dilation. He could have acute dilation in bed, in turning over.

* * * He could have been tying his shoes and had acute dilation of the heart. He could have had strained work—anything that would be exertion could cause acute dilation." Finally, in answer to a hypothetical question by counsel for appellee, the doctor testified: "I would say that the death was probably coincidental with the employment. My reason for that answer is that, as I answer the previous question, the same condition could happen with the man in bed and other occasions as I stated—tying his shoes or anything that has an additional exertion—and it is not so important as to what the man was doing actually at that time as it is to the actual condition that was existing within the man; and he could have been sitting down and eating his lunch and the same thing could have happened as happened from what I learned of it, while he was working."

The other physician, Dr. Wood, witness for appellee, testified to being present at the autopsy and that it revealed "practically the same as Deputy Coroner Murphy has already related." That Smith's lungs showed a great deal of passive congestion (or inflammation), and were bound down in the pleural cavity. "The heart was two and a half times its normal size, at least. The right side was dilated and contained thickened clots—blood clots— and all of the heart valves were practically destroyed from disease. The two ulcers, which Dr. Murphy already mentioned in the aorta, which I think were each about the size of a penny and all ready to perforate." His conclusion was that Smith died of natural causes, the result of the diseased heart condition. That in his opinion the death was coincidental. "In the first place, this man's heart was completely shot; I mean, was diseased to the extreme end. The valves were not closed; they were eaten away and the blood was allowed to gush back each time the valves would close, forcing the blood from one chamber to the other. It could not close completely, because the valves were so destroyed, and the blood would gush back, causing this congested condition of the heart and the lungs and the kidneys. In the second place, the heart was at least two and a half times its normal size, which was a condition that had been developing for a period of probably years," which means that it was hypertrophied. That his death was coincidental with the employment; that Smith was not overexerting himself, be-

cause he was used to that type of work; his muscles were developed properly and amply able to take care of it. Had exertion brought about the acute conditions, Smith would surely have had a rupture of one or both of the ulcers in the aorta, which is the largest blood vessel in the body and comes directly from the heart; the ulcers were so thin that they were transparent, and the wall of the heart is very thick and muscular. "It had eaten through these two ulcers to the point that you could see through the wall of that heart. In other words, all that was left over the outer covering of the heart. Any undue strain that would cause the blood to be pumped into the aorta with any greater force would surely have ruptured one or both of these ulcers. That is why I would say that I do not believe that the exertion which has been described as excessive and, in this particular case, from the muscular development, I do not believe it was excessive." Smith died from dilatation of the heart. In other words, the heart muscles had failed to act. That during the doctor's twenty years of practice he knew of no case of death from heart disease "where you could place your finger on over-exertion. Why, the majority of the cases die in bed. * * * They drop dead at the desk without any exertion." In this particular instance, "we have the ulcers ready to perforate with the least exertion. His heart muscles were so flabby and so dilated that I don't believe they could have forced the blood hard enough to have ruptured these ulcers, and they were ready to perforate. I don't think they had force enough to do it."

On cross-examination Dr. Wood testified that the heart muscles were so flabby "they just stopped beating. That is all; the heart stopped. They were so flabby they just could not go any more." That if Smith had had excessive exercise "there would be an excessive force of blood going into his heart. Any excess force of blood would have ruptured these two ulcers, which were transparent through a muscular wall—had eaten through. They surely would have ruptured probably both of those little ulcers." That the ulcers were not ruptured.

The pertinent findings of fact of the Deputy Commissioner are as follows: "That evidence adduced at a hearing before the Deputy Commissioner * * * establishes that the employee died from acute dilatation of the heart which was

complicated by cardio-renal disease; that at an autopsy performed on July 17, 1933, at the District morgue it was found that the heart of the employee was enlarged to about 2½ to 3 times its normal size; that the right side was extremely dilated and contained numerous clots, all of the heart valves were practically destroyed, and the aorta was hemorrhagic with two ulcers, one about the size of a penny ready to perforate; both kidneys were enlarged and diseased and the liver gave evidence of sclerosis; that the employee was using a heavy sledge hammer, the weight estimated between 18 and 20 pounds; that he had been using this hammer for about one hour, breaking up concrete; that the condition of the employee with relation to his heart, etc., as above described, was such that extreme exertion like swinging a sledge hammer for one hour was too strenuous exercise, and that by reason of said exercise, the flow of blood required to supply the system was greatly increased; that the condition of the claimant was such that he should not have been engaged in any strenuous exercise, and that the acute onset was precipitated by the strenuous exercise in which he was engaged and as a result of which the employee died from congested heart failure and dilatation of the heart, resulting from cardio-renal disease of long standing and aggravated by the employment in which he was engaged at the time of the injury."

This case is controlled by Liberty Mut. Ins. Co. v. Hoage, 62 App. D. C. 189, 65 F. (2d) 822, 824. In that case we ruled that the findings of the Deputy Commissioner that the death of a laborer was caused by heat exhaustion while working on an abnormally hot day were not supported by evidence showing that the death was caused by an edema of the lungs resulting from congested heart failure. The medical testimony in that case was to the effect that the deceased workman "had chronic kidney disease, chronic liver disease, and chronic heart disease, and that he died with an edema of his lungs resulting from congested heart failure. * * * That there was nothing shown in the examination to justify attributing the cause of death to heat stroke, but unmistakable evidence from which to attribute it to disease and to that alone."

In Speaks v. Hoage, 64 App. D. C. 324, 78 F.(2d) 208, decided May 6, 1935, the employee Speaks, after carrying a can of gasoline, weighing between 30 and 35 pounds, a distance of about 240 feet, was found lying on the floor of his employer's premises apparently in pain; at a hospital he died two days later. It was claimed that the exertion in carrying the gasoline subjected Speaks' heart to a strain which was a contributing cause of his death. The Deputy Commissioner found that the employee was suffering from a long-standing disease of the heart and that his death was caused by that disease; and that the evidence failed to establish that he suffered sufficient strain while at work to bring about the acute condition of the heart which caused his death. In that case the deputy coroner of the District testified that "the cause of death was a cardial renal hepatic disease; tnat is, a disease of the heart, kidneys, and liver, advanced in type, associated with the terminal condition of an acute cardiac dilatation. * * * The man was dead walking around." In affirming the decree of the lower court sustaining the Deputy Commissioner's rejection of the widow's compensation claim, we said: "We think that there is substantial evidence tending to prove that the death of the employee resulted from an acute attack of long standing and fatal heart disease and that the onset was not caused in whole or in part by any work performed by him."

So, in the present case, there is substantial evidence that the death of the employee was due to an acute attack of a long-standing heart disease and that the onset was not caused in whole or in part by any work performed by him. In other words, to justify an award there must have been some substantial connection between the alleged accident and the employment. Hoage v. Employers' Liability Assur. Corp., 62 App. D. C. 77, 64 F.(2d) 715. As we said in Ayers v. Hoage, 61 App. D. C. 388, 63 F.(2d) 364, 365: "Before he can make a valid award, the trier must determine that there is a direct causal connection between the injury whether it be the result of accident or disease, and the employment." In the present case, as in Liberty Mut. Ins. Co. v. Hoage, 62 App. D. C. 189, 65 F.(2d) 822, 824, the uncontradicted testimony of the doctors "conclusively traces the cause of death and places it wholly at the door of a fatal disease from which the employee was suffering."

Decree affirmed.

Affirmed.

HITZ, Associate Justice, dissents.