**TRUDENICH v. MARSHALL, Deputy Com'r (ROTHSCHILD–INTERNATIONAL STEVEDORING CO. et al., Interveners).**

No. 7401.

District Court, W. D. Washington, S. D.

Sept. 3, 1940.

Frank L. Cathersal, of Tacoma, Wash. for libelant.

J. Charles Dennis, U. S. Atty., and Frank Hale, Asst. U. S. Atty., both of Tacoma, Wash., for respondent.

Bogle, Bogle & Gates, of Seattle, Wash., for intervening respondents.

YANKWICH, District Judge.

On January 2 and 3, 1940, the libelant, George Trudenich, a longshoreman, was in the employ of Rothschild International Stevedoring Co., at Tacoma, Washington, on board the steamship "Satartia" then in the harbor. On January 2, 1940, he was engaged in the taking of sacks of ore weighing 130–160 pounds from the pile and carrying them about ten feet to the square of the hatch of the steamship, where they were placed on lift-boards. On the afternoon of that day and on the morning of January 3, 1940, he was engaged in pulling 100-pound sacks of sugar from a pile and carrying them to the lift-boards, and while so engaged, experienced pain in the chest. He had been engaged in handling the sacks from eight until eleven thirty o'clock in the morning. He had two or three attacks of pain within an hour. Later that day and on succeeding days he had similar attacks. It was later determined that he had had an attack of coronary thrombosis.

The libelant filed his claim before the United States Employee's Compensation Commission, 14th Compensation District, under the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. 901 et seq.

On March 25, 1940, W. A. Marshall, deputy commissioner for the district, rejected the claim.

He held that: "The disability of the claimant was not caused by any injury sustained by him in the course of his employment on January 2nd or January 3rd 1940."

Upon the basis of the findings of fact, as briefly summarized here, he rejected the claim, giving as his reason: "Failure to establish the occurrence of an accidental injury, arising out of and in the course of employment."

On April 23, 1940, the libelant filed his libel in admiralty against the deputy commissioner, attacking the order as not being "in accordance with law." 33 U.S.C.A. 921.

The employer and insurance carrier have intervened. They and the deputy commissioner have answered, bringing before us the entire transcript of record and proceedings before the commissioner. The answers challenge the sufficiency of the libel and seek its dismissal.

We are to determine, on the basis of this record, whether the denial of compensation was right.

The order is challenged because it failed to find that the defendant suffered an injury, namely coronary thrombosis, which arose out of and was received in the course of his employment, was accidental in nature and was compensable under the Longshoremen's and Harbor Workers' Compensation Act. The libelant seeks the usual review of the order, a permanent injunction restraining its enforcement and a mandatory injunction directing the deputy commissioner to set aside his findings of non-compensability and his denial of the claim.

The scope of judicial inquiry, on such review, has been definitely limited by a long series of decisions.

The Act is in line with the trend, which began some decades ago, aiming to throw the burden of industrial injuries upon industry, regardless of the fault of the employee. Wheeling Corrugating Co. v. McManigal, 4 Cir., 1930, 41 F.2d 593. See my opinion in Didier v. Crescent Wharf & Warehouse Co., D.C.Cal.1936, 15 F.Supp. 91.

█ Because of its beneficent social scope, we are bidden to construe it liberally, in order to achieve its purposes. Baltimore & Philadelphia Steamboat Co. v. Norton 1932, 284 U.S. 408, 414, 52 S.Ct. 187, 76 L.Ed. 366; Maryland Casualty Co. v. Lawson, 5 Cir., 1939, 101 F.2d 732.

But we are warned by our own Circuit Court of Appeals that, in applying the act, "neither the deputy commissioner nor the courts have the power to legislate." Kobilkin v. Pillsbury, 9 Cir., 1939, 103 F.2d 667, 670.

■ The benefits of finality, one of the chief merits of administration, are secured to the beneficiaries of the act, by not allowing courts, on review, to reassay or reweigh the evidence, and by enjoining them not to disturb the commissioner's findings of fact, unless *wholly unsupported*, by any evidence.

■ Before the reviewing court can say that a compensation order is "not in accordance with law," 33 U.S.C.A. 921(b), when the decision of the deputy commissioner is not a mere inference, or deduction from undisputed facts, but a *factual conclusion*, drawn by him from the conflicting testimony of witnesses whom he heard, the court must be satisfied that no substantial testimony supports the conclusion.

Otherwise, it must uphold it. Crowell v. Benson, 1932, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598; Voehl v. Indemnity Ins. Co., 1933, 288 U.S. 162, 53 S.Ct. 380, 77 L.Ed. 676, 87 A.L.R. 245; Wheeling Corrugating Co. v. McManigal, 4 Cir., 1930, 41 F.2d 593; Southern Steamship Co. v. Norton, 3 Cir., 1939, 101 F.2d 825; South Chicago Coal & Dock Co. v. Bassett, 7 Cir., 1939, 104 F.2d 522; Williams v. American Employers' Ins. Co., 1939, 71 App.D.C. 153, 107 F.2d 953; Maryland Casualty Co. v. Cardillo, 1939, 71 App.D.C. 160, 107 F.2d 959; Potomac Electric Power Co. v. Cardillo, 1939, 71 App.D.C. 163, 107 F.2d 962, 963.

■ The injury for which compensation was sought before the deputy commissioner was coronary thrombosis which developed several days after the pain experienced while at work. "Injury," under the Act, means "accidental injury * * * arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury." 33 U.S.C.A. 902(2).

"Disability," means "incapacity because of injury, to earn the wages which the employee was receiving at the time of injury, in the same or any other employment." 33 U.S.C.A. 902(10). In this case, it is claimed that the strain incidental to lifting the ore sacks, resulted in the injury which developed later—*coronary thrombosis*. Despite its liberality, the Act does not allow compensation unless the injury flows from the employment as effect from cause. Thus, Ayers v. Hoage, 1933, 61 App.D.C. 388, 63 F.2d 364, 365: "An injury 'arises out of' the employment

within the meaning of the Compensation Act when it occurs in the course of the employment and as a result of a risk involved in or incidental to the employment or to the conditions under which it is required to be performed. The *mere fact that the injury is contemporaneous or coincident with the employment is not a sufficient basis for an award."* , Indemnity Insurance Co. of North America v. Hoage, 61 App.D.C. 173, 58 F.2d 1074; Madore v. New Departure Mfg. Co., 104 Conn. 709, 134 A. 259, 261. In the Madore case the court said: "Before he can make a valid award, the trier must determine that there is a direct causal connection between the injury whether it be the result of accident or disease, and the employment. The question he must answer is: *Was the employment a proximate cause of the disablement, or was the injured condition merely contemporaneous or coincident with the employment? If it was the latter, there can be no award made."* (Italics added) And see, Pacific Employers' Insurance Co. v. Pillsbury, 9 Cir., 1932, 61 F.2d 101; Speaks v. Hoage, 1935, 64 App. D.C. 324, 78 F.2d 208; Southern S.S. Co. v. Norton, 3 Cir., 101 F.2d 825.

The libelant was suffering from angina pectoris. The employer's physician stated, at the hearing, that the attacks of pain suffered by the libelant, at his employment, were attacks of angina pectoris. On the basis of this admission, the claimant would have us apply to the situation the cases which hold that when a pre-existing disease is accelerated, aggravated, or manifests itself as a result of the exertion incidental to the work in which the worker is engaged, a compensable injury results. See Pacific Employers' Insurance Co. v. Pillsbury, 9 Cir., 1932, 61 F.2d 101; New Amsterdam Casualty Co. v. Hoage, 1932, 61 App.D.C. 306, 62 F.2d 468; Baltimore & O. R. Co. v. Clark, 4 Cir., 1932, 59 F.2d 595; Hoage v. Employers' Liability Assur. Corp. 1933, 62 App.D.C. 77, 64 F.2d 715; Commercial Casualty Insurance Co. v. Hoage, 1935, 64 App.D.C. 158, 75 F.2d 677; Hoage v. Royal Indemnity Co. 1937, 67 App.D.C. 142, 90 F.2d 387; Bergagna v. Department of Labor and Industries, 1939, 199 Wash. 263, 91 P.2d 551.

■ We have no quarrel with the rule declared in these decisions. The employer takes the workman, to use a term by which the mercantile world designates damaged goods, "as is."

If he is suffering from a disease, and the ordinary exertion incidental to the work brings on an attack or acceleration, or aggravation of it, we have a compensable injury.

And this, although the exertion *would not have harmed at all* a person not suffering from the particular disease.

So, whether injury followed an unaccounted dizziness (New Amsterdam Cas. Co. v. Hoage, supra), or pre-existing arteriosclerosis (Hoage v. Employers' Liability Assur. Corp., supra; Hoage v. Royal Indemnity Co., supra), or an enlarged heart (Commercial Casualty Co. v. Hoage, supra), or myocarditis (Bergagna v. Dept. of Labor and Ind., supra), compensation was allowed when the exertion of the workman accelerated or aggravated his condition, brought on an attack, or brought on other diseases directly traceable to the pre-existing condition.

In all these cases the injury is *related causally* to the employment, the law merely disregarding the pre-existing disease, without the presence of which the injury would not have occurred.

■ But when the employment and the injury are not related causally, the unrelated manifestation of a pre-existing condition at the time the work is being performed is not a compensable injury.

The appearance or manifestation of a pre-existing condition under such circumstances is deemed to be *coincidental* and *not causal*.

We have a like situation here.

The claimant's family physician, Dr. William D. McCreery, expressed the opinion that the attack which he suffered was due to overexertion.

In this he was corroborated by a young associate, Dr. Edwin J. Fairbourn, only recently admitted to practice.

But there was also before the commissioner the testimony of Dr. Warren B. Penney, a specialist in internal medicine of long standing, a former President of the Washington State Medical Association, who examined the claimant on January 23, 1940. He gave it as his positive opinion, for which he claimed the support of authorities on the subject, that the pains which the claimant experienced at his work were attacks of angina pectoris and that neither had any causal relation to the coronary thrombosis which was found to exist days after the work was done.

We quote from the record:

"Q. Doctor, having in mind the history as given by Mr. Trudenich, and your examination and findings, what is your opinion as to whether or not the work of handling sugar sacks on January 3rd, was the cause of this man's coronary thrombosis of which he is presently disabled? A. My own feeling is that the preponderance of the heart men, or most of the heart men who write literature, that his particular exertion at the time, or a person's work *is not a factor* in the precipitating of an attack of coronary thrombosis; that it is possible that a man's whole life time work and habits may have been a factor in developing his underlying arteriosclerosis condition, although that is a question of more study; that is, more or less from what he has done before may have been a factor.

"Q. Does that concur with your own experience? A. It does. I think just as severe cases, and some cases in women, who have not had any extra strenuous work, and I think with professional men, we are not doing strenuous, hard, active, physical labor, but the percentage of these sort of things in that class of people is decidedly higher than in the hard working class of people like longshoremen, miners, farmers, and so forth.

"Q. I take it, that the work *on that particular day is not a contributing factor in the cause of the thrombosis?* A. I don't see how it could be.

"Q. Does the vast majority of cases occur while the person is at rest? A. I don't know as I have ever seen one that didn't, I don't think I have." (Italics added)

Here we have reputable medical testimony, which commanded belief on the part of the deputy commissioner, that there was no causal connection between the injury claimed and the work done.

If this testimony is to be believed—and the deputy commissioner chose to believe it, as was his right—the manifestation of the coronary thrombosis was, as the physician put it, "incidental." The condition was neither brought on nor aggravated by the work which the libelant performed on the day when he complained of illness, and the angina pectoris was unrelated to the thrombosis.

■ In sum, all we have here is a case wherein a pre-existing disease appears at

the time of employment. This *does not* suffice to establish compensable injury. *More is necessary.*

It must "arise out of" the employment. It must be brought on by work done in the course of the employment, or spring from it.

█ There was, therefore, substantial evidence before the deputy commissioner from which to draw the conclusion that the injury complained of by the libelant was unconnected with the employment.

The order is affirmed. The libel is dismissed. Exception to libelant.