**PATE STEVEDORING CO. et al. v.
HENDERSON et al.**

No. 2351.

District Court, S. D. Alabama, S. D.

April 2, 1942.

T. E. Twitty, R. H. Inge, and Armbrecht,
Inge, Twitty & Jackson, all of Mobile, Ala.,
for plaintiff.

P. C. Fountain, of Mobile, Ala., for Joseph H. Henderson.

D. R. Coley, Jr., of Mobile, Ala., for Lena Hall.

McDUFFIE, District Judge.

This cause, transferred to the admiralty docket, was heard on the libel of the above-named corporations, wherein it was sought to set aside the award of the Commissioner and enjoin further payments thereunder. This court has reviewed the testimony before the Commissioner, heard oral arguments, and reviewed many authorities touching upon the issues involved.

From the rather voluminous evidence in the case, the material facts may be summarized as follows:

Otis Hall, a longshoreman, while working in the hold of a ship, was taken suddenly ill about 2 P. M. on March 2, 1941, and died in a few hours thereafter. At the time he was stricken, he and his fellow workmen were handling barrels of resin weighing about 500 pounds. The barrels were lowered through a hatch by machinery, rolled by two men about 12 feet to a door in a latticed bulkhead, and put through the door; from there two men rolled them about 12 to 14 feet, where two other men headed up and stowed them.

At the moment the deceased was stricken, he was about 4 feet on the inside of the door, rolling a barrel to the place of stowage on the "tween deck" of the ship. He slumped over the barrel and complained of cramps in his hands and stomach. One witness with whom he was rolling barrels said Hall had told him he was hot and he was perspiring, but did not say he was perspiring more than the others at work. He was lifted out of the hold in the basket or the sling, sent home, and from there to the hospital, but died en route before the doctor called by his employer saw him.

As to the conditions under which the deceased worked, there was evidence by several witnesses that those engaged in loading the barrels of resin were warm, some witnesses stating it was hot, but no one said the heat was excessive. The report of the weather bureau showed for that day a maximum temperature of 70° and a minimum of 59°. There was testimony by one or more witnesses that the work was hard and fast, but it was also stated that it was no more so than the ordinary and similar work of longshoremen. The deceased had worked as a longshoreman and at other manual labor in and around Mobile for several years.

In the forenoon, Hall with his fellow workmen unloaded salt cake, which was broken with a pick, shovelled into baskets and mechanically lifted out of the hold. This work, which was not unusually strenuous, continued after lunch for a half to one hour, when the loading of the resin began. Hall ate a hearty breakfast on the day of his death, began work about 7 A. M., stopped for an hour at noon, had lunch, and, after eating, rested for about a half hour or more. He had been apparently very well for a long time and had made no complaint of being ill on that day.

An autopsy was performed and a microscopic examination was made. The deceased was found to have had chronic myocarditis, a fatal disease of the heart, hemmorhagic gastritis, and acute dilatation of the stomach, chronic appendicitis and syphillis. There was positive evidence that his heart was in such a serious condition, any slight exertion might have brought on his death.

The Commissioner found that the deceased "sustained accidental injury resulting in his disability while he was employed as a longshoreman; that he had a pre-existing heart condition found by the autopsy to be chronic myocarditis; that the work in which he was engaged and conditions under which he worked on the day of his death, materially aggravated a pre-existing heart condition and hastened and precipitated his death." On such findings, an award was made.

The law applicable to claims of this kind is well settled. This court is not unmindful of the rule that the award of a Deputy Commissioner cannot be disturbed if it is based on substantial evidence. While the courts liberally construe the Longshoreman's Compensation Act, 33 U.S.C.A. § 901 et seq., they are all in accord that a causal connection between the work of the employee and his injury in the course of employment must be proven; that if the Deputy Commissioner's findings are assumptions based upon possibilities or conjecture instead of substantial proof, such findings cannot support an award. The mere fact that an injury is contemporaneous or co-incidental with the employment is not a sufficient basis for an award. In Ayers v. Hoage, 61 App.D.C. 388, 63 F.2d 364, 365, the following language sets out

14

the rule: "Before he can make a valid award, the trier must determine that there is a direct causal connection between the injury whether it be the result of accident or disease, and the employment. The question he must answer is: Was the employment a proximate cause of the disablement, or was the injured condition merely contemporaneous or coincident with the employment? If it was the latter, there can be no award made."

The above quotation was taken by the Court of Appeals of the District of Columbia from the Connecticut case of Madore v. New Departure Mfg. Co., 104 Conn. 709, 134 A. 259, and has often been approved and adopted by many of the Federal Courts.

■ The findings of a Deputy Commissioner must be sufficient under the law to support the award. Ocean S. S. Co. v. Lawson, 5 Cir., 68 F.2d 55.

■ If the Deputy Commissioner ignores proper evidence presented, it is an error of law; if prejudice results, his order is not in accordance with law and the Court will give relief. Grant v. Marshall, D.C., 56 F.2d 654.

If the award is based on conjecture, it is not in accordance with law. New Amsterdam Casualty Co. v. Hoage, 60 App.D.C. 40, 46 F.2d 837.

■ If it is arbitrary and unreasonable, it is not in accordance with law. Powell v. Hoage, 61 App.D.C. 99, 57 F.2d 766.

■ The only question involved here is whether the death of Hall was caused by an attack of the heart brought on in whole or in part by the exertion of the work in which he was engaged, or whether the heart failure was *coincidental with* but not caused by *that exertion*. If the evidence heard by the Deputy Commissioner was not of a competent and substantial character, or if it was such that the Commissioner entered the field of speculation or conjecture in finding facts, the award must be set aside. If this were not the rule, every employer is the insurer of the life and health of his employees. That such was not the purpose of the Longshoreman's Compensation Act was expressed in Grain Handling Co. v. Sweeney, 2 Cir., in 102 F.2d 464, 465: "* * * It is indeed necessary not to extend the statute so as to make it a general health insurance, and to avoid this the coverage must be limited to diseases resulting from working conditions peculiar to the calling. In order to recover a workman must be exposed to hazards greater than those involved in ordinary living, and the disease must arise from one of these. * * *"

A careful review of all the testimony in this case brings the inescapable conclusion that the chronic and fatal disease of the heart, which no one has suggested was in the slightest way attributable to the work in which the deceased was employed, was the cause of his death. The evidence is clear and convincing that with Hall's serious heart condition, any trival exertion such as walking the street, tying his shoe, and even getting in and out of bed, could have and might have precipitated the acute condition and brought on his death. According to the doctor who performed the autopsy and made a microscopic examination of the heart, and using his language: "There was sufficient or enough disease of the heart that anything would have been the trigger to set it off."

This view was concurred in by Dr. Walker, who, however, did not see Hall before or after death, and who did not know, at the time he testified, that Dr. Wise had made a microscopic examination. Dr. Walker stated that he did not agree with the diagnosis of Dr. Wise, unless a microscopic examination had been made, but that if the deceased had myocarditis, any slight exertion might cause his death.

It is common knowledge that many people suffering with a serious heart disease die from the slightest exertion or none at all. Of course one may guess that exertion in many instances, and indeed in this case, hastened death, but there is a vast difference between a mere guess or an assumption of a fact, and proof by competent and substantial evidence upon which such a fact can be found.

It is difficult to understand how the Commissioner, in the light of all the testimony, found as a fact that the conditions under which the deceased worked contributed to his death, because the evidence as to those conditions fails to show that they were exceptional or unusual as to heat or lack of ventilation, as well as to the difficulty or hazards of the employment. While there was some testimony by one or more of Hall's co-workers that the work was hard and fast, yet no conclusion can be drawn from their testimony that the work necessitated any unusual strain or extraordinary effort. Others did the same work without

the slightest ill effects, and the post mortem examination, according to positive and undisputed testimony, showed no sign of strain on the tissues of the heart, neither did it show any evidence of a heat stroke or heat exhaustion.

This court does not believe the findings in this case could have been based on the testimony of Dr. Walker. Never having seen the deceased, his statement should be read with that fact in mind, in explanation of the inconsistencies in his testimony, which were noted in two or more instances by the Commissioner himself. Dr. Walker certified as coroner, after discussing the case with Dr. Wise, and basing his certificate upon such discussion, that Otis Hall died from myocarditis and hemmorhagic gastritis. At the hearing before the Deputy Commissioner he testified that the findings of Dr. Wise were not conclusive, but based upon such findings, "most probably or very likely, the death of Hall came from a heat stroke or heat exhaustion." Dr. Walker first thought that death was due to a coronary acclusion, but in the course of his testimony, stated that he could not say in his opinion what caused Hall's death. The claimant in this case contended that death was due to a heat stroke or heat exhaustion. On examination by the Commissioner, Dr. Walker stated that probably getting too warm or exertion after eating, or the exhaustion from heat, precipitated the acute condition of Hall's heart and brought on his death. The testimony of Dr. Walker on the whole, however, is so lacking in a definite and clear opinion as to the cause of Hall's death, it was valueless to the Commissioner and could not justify the conclusion that the work Hall was doing materially aggravated and hastened a pre-existing heart ailment which caused his death.

The testimony of the lay witnesses could not furnish a basis for the findings of the Commissioner in this case, because they could not have known nor testified to a pre-existing heart condition such as the Commissioner found from the evidence. The findings of the Commissioner, therefore, must have been based upon the testimony of Dr. Wise, and a review of all his testimony leads to the conclusion that the Commissioner based his findings upon answers to only two questions propounded by the Commissioner in his rather extended examination. Apparently the Deputy Commissioner gave little or no consideration to the other answers made to him by this doctor. On page 231 of the record, Dr. Wise, in answer to the Commissioner, stated he believed he would say from the facts as recited by the Commissioner, that the work Hall was doing materially aggravated and hastened his death. The doctor immediately stated, however, that he could not say the work hastened the death, his language being: "We cannot surmise that," and stated further that he could not say that rolling the resin barrels brought on the death of Hall. In answer to another question by the Commissioner, pages 231, 232 of the transcript, the doctor stated that he believed it would be reasonable to say the work aggravated the pre-existing condition and precipitated Hall's death.

A careful review of the testimony of Dr. Wise, however, is convincing that in his opinion, as stated positively by the doctor, the employment of Hall did not precipitate his death but his death was coincident or contemporaneous with the employment. The record shows he stated that "the correct way to describe it was to say the death was coincidental with the work." His testimony as a whole does not furnish substantial evidence to meet the burden of the claimant in proving there was a causal connection between the work being done by Hall and his death. From the doctor's testimony, with most liberal consideration for the claimant, it could only be inferred that there was a possibility, or that one might reasonably assume the work accelerated or aggravated the serious heart condition and precipitated death. The fact finder should try with an open mind to consider all of the doctor's testimony, and should not cast aside or wholly disregard that testimony of a positive nature given by the doctor, and accept only that part or which at best is in substance and effect, that there is a *possibility* that the work done by Hall materially aggravated his heart condition and caused his death.

The law makers did not intend to relieve a claimant from the burden of proving his claim by such evidence as will bring conviction or assurance that the injury was accidental within the meaning of the Act. While it is presumed that a claim for compensation comes within the Act, this presumption is not a substitute for proof by substantial evidence that the injury arose out of and in the course of his employment.

In the case of Liberty Mutual Insurance Co. v. Hoage, 62 App.D.C. 189, 65 F.2d

822, 824, the Court of Appeals of the District of Columbia said: "And so we have a case of a man in apparent good health, while at work on a hot day, suddenly falling out with cramps, becoming immediately unconscious, and dying within a few hours, and we are asked to approve a compensation award based on these facts alone. Perhaps, if this were all, we should be disposed, in compliance with the purpose of the act, to place the burden on the industry rather than the laborer and indulge the presumption provided in section 20 of the act (33 U.S.C.A. § 920), to justify our saying that from these facts an inference of death from the employment arose, but where, as is the case here, there is other evidence of a positive nature, and wholly uncontradicted, which definitely and conclusively traces the cause of death and places it wholly at the door of a fatal disease from which the employee was suffering, and wholly away from any relation to the work, then, in such a case, the inference we might otherwise indulge must yield to the actual, and the Deputy Commissioner's determination must be set aside."

In the case of Speaks v. Hoage, 64 App. D.C. 324, 78 F.2d 208, 209, certiorari denied 296 U.S. 574, 56 S.Ct. 121, 80 L.Ed. 405, in upholding the Deputy Commissioner's ruling, it was said:

"It is claimed by appellant that the physical effort made by Speaks in carrying the can of gasoline subjected his heart to a strain which was a contributing cause of his death; and that the injury was accidental and occurred in the course of and grew out of his employment and was compensable.

"The deputy commissioner, however, found upon the evidence that Speaks was suffering from a long-standing disease of the heart; that his death was caused by this disease; and that the evidence failed to establish that he suffered sufficient strain while at work to bring about the acute condition of the heart which caused his death."

Claimant quotes extensively the language of the opinion in Southern Shipping Co. v. Lawson, D.C., 5 F.Supp. 321. The facts in that case are distinguishable from those here because in that case the employee was on his feet continuously for twenty-one hours, and there was material and positive testimony by a doctor who attended the deceased during his illness and was present at the autopsy that in his opinion the work aggravated the man's condition.

In Hoage v. Liberty Mutual Insurance Co., 64 App.D.C. 395, 78 F.2d 874, 877, the employee was engaged in work on the streets, using a heavy sledge-hammer for about an hour when he died from acute dilatation of the heart. The Deputy Commissioner awarded compensation which was set aside on appeal by the lower court and affirmed by the Court of Appeals.

A quotation below from that case appears applicable in the case here under consideration. "So, in the present case, there is substantial evidence that the death of the employee was due to an acute attack of a long-standing heart disease and that the onset was not caused in whole or in part by any work performed by him. In other words, to justify an award there must have been some substantial connection between the alleged accident and the employment. Hoage v. Employers' Liability Assur. Corp., 62 App.D.C. 77, 64 F.2d 715. As we said in Ayers v. Hoage, 61 App.D.C. 388, 63 F.2d 364, 365: 'Before he can make a valid award, the trier must determine that there is a direct causal connection between the injury whether it be the result of accident or disease, and the employment.' In the present case, as in Liberty Mutual Ins. Co. v. Hoage, 62 App.D.C. 189, 65 F.2d 822, 824, the uncontradicted testimony of the doctors 'conclusively traces the cause of death and places it wholly at the door of a fatal disease from which the employee was suffering.'"

In the case of Henderson et al. v. Maryland Casualty Co., 62 F.2d 107, 109, certiorari denied 289 U.S. 727, 53 S.Ct. 528, 77 L.Ed. 1477, the Fifth Circuit Court of Appeals said: "Regardless of whether uremic poisoning or apoplexy from hardened arteries was the immediate cause of death, we think the evidence insufficient to carry the burden of proof that there was any physical injury to the bodily tissues arising out of the employment. Henderson had no accident, suffered no strain, was doing nothing unusual or violent, and was exposed by his work to no heat different from that operating upon other people out of doors. It is shown that he began to die while at work, but is not shown that injury originating in his employment caused his death within the meaning of the law."

■ It is the opinion of this court that the work engaged in by Otis Hall did not

subject him to a hazard to which he would not have been equally exposed apart from the employment. Though his fatal condition arose while he was at work, there is no substantial evidence to justify a finding that the work he was performing materially aggravated, hastened, or caused his death.

The relief prayed for is granted, and the award of the Deputy Commissioner is set aside.