Dennis SIZEMORE
v.
UNITED STATES LINES COMPANY
v.
T. HOGAN CORPORATION.
No. 25791.

United States District Court
E. D. Pennsylvania.
Sept. 24, 1962.

Avram G. Adler, Philadelphia, Pa., for plaintiff.

Thomas F. Mount, Philadelphia, Pa., for defendant.

Robert Cox, Philadelphia, Pa., for third-party defendant.

VAN DUSEN, District Judge.

This personal injury action, which resulted in a special verdict for plaintiff on May 6, 1962,[1] is before the court on plaintiff's post-trial motion for a new trial on the issues of damages and contributory negligence or, in the alternative, for a new trial on all issues.

### I. Damages

In May 1957, the plaintiff slipped off some cartons of pineapple juice on which he was working while unloading these cartons in the lower hold of a ship and fell about 15 feet to the bottom of the hold, fracturing two ribs (11th and 12th; see P–1) and injured his lower back. Well-defined osseous repair of the rib fractures was noted by July 8, 1957 (see P–1), and plaintiff returned to work that month. In his pre-trial memorandum, plaintiff claimed severe and continuing back pain, frequently disabling in nature, as a result of herniation of the fourth and fifth lumbar intervertebral discs (p. 3 of Document No. 10). Defendant admitted total disability for a period of nine weeks, but alleged that "Any difficulties in the back area are chronic, degenerative changes unrelated to the acci-

1. The Special Verdict reads as follows:
   "1. Were either of the following substantial factors in causing the accident of plaintiff on May 6, 1957, on the SS. 'Pioneer Moor':
   (a) any unseaworthiness of the ship?
   Yes or No ___Yes___
   (b) any negligent conduct of the defendant shipowner?
   Yes or No ___Yes___

   If your answer to both of the above questions is 'no,' please do not answer any of the following questions. If your answer to either or both of the above questions is 'yes,' please answer the following questions.
   "2. What damages did the plaintiff suffer as a result of his accident on May 6, 1957? (medical expenses in 1957, possible future medical expenses, loss of earnings to date of trial, impairment of future earning capacity, reduced to pres-

ent worth, and pain, suffering, injury and inconvenience)        $4.758.–
   "3. Was the plaintiff negligent and did this negligence contribute to the accident of plaintiff on May 6, 1957?
   Yes or No ___Yes___
   If your answer to this question is 'no,' please do not answer question 4. If your answer to this question is 'yes,' please answer question 4.
   "4. What proportion of the total negligence contributing to the accident of plaintiff on May 6, 1957, was attributable to him?
   ___25%___
   "5. Did any fault described in question 1, which you answered 'yes,' result from any failure of the stevedoring company (T. Hogan Corporation) to perform its obligation to discharge the cargo in a reasonably safe and workmanlike manner?
   Yes or No ___Yes___"

dent complained of" (page 2 of Document No. 11).[2] Plaintiff testified that he worked steadily from July 16, 1957, to February 12, 1959, due to economic need, but he was constantly in pain.

On February 12, 1959, plaintiff had another accident[3] on another ship of another company, which resulted in an injury to his ankle and total disability until April 13, 1959. He lost time from work in May 1959 due to pneumonia. He did not consult a doctor for any medical treatment in 1960, 1961, or 1962[4] until April 23, within two weeks of the trial, when he was advised by Dr. Erdman that he should do no further heavy work until he had a myelogram, which might indicate the need for an operation to eliminate the nerve root irritation that, in the doctor's opinion, was caused by the accident of May 1957 (N.T. 24–27 & 40 of Document No. 28). Also, Dr. Myers testified for plaintiff that he had a herniated intervertebral disc caused by the accident of May 1957 which required a myelogram. An operation was scheduled for May 16, 1962, but was cancelled in the light of what plaintiff considers the inadequate damages awarded by the jury, and he has admittedly returned to work since the trial.

The uncontradicted work records show that plaintiff worked at least 285½ hours in the last quarter of 1961 and 298½ hours in the first quarter of 1962. During the first 21 days of April 1962,[5] he worked these hours on these days (D–1):

| Days Worked | Hours | Days Worked | Hours |
|---|---|---|---|
| 4/ 3/62 | 4 | 4/14/62 | 5½ |
| 4/ 4/62 | 8 | 4/16/62 | 11 |
| 4/ 5/62 | 6½ | 4/17/62 | 7½ |
| 4/ 6/62 | 8½ | 4/18/62 | 6 |
| 4/ 9/62 | 7 | 4/20/62 | 4 |
| 4/11/62 | 6 | 4/21/62 | 4½ |
| 4/13/62 | 4 | | |

For the six-month periods ended on the following dates, he worked the following hours (P–3):

| Period Ended | Hours | Period Ended | Hours |
|---|---|---|---|
| 3/31/60 | 785 | 3/31/61 | 697 |
| 9/30/60 | 731½ | 9/30/61 | 826½ |

In the part of the charge covering damages (N.T. 30 ff. of Document No. 31), the trial judge explained that if the defendant was liable, the plaintiff would at least be entitled to his medical expenses ($178.48), nine weeks' loss of

2. Defendant's doctor testified that plaintiff needs a bone graft operation to correct the arthritis of his back (not a disc operation) because he needs the arthritic, degenerated areas fused and not because of the accident of May 1957 (N.T. 46 of Document No. 31).

3. Plaintiff filed, in January 1961, a suit in the State Court (Court of Common Pleas No. 2 of Philadelphia County, December Term 1960, No. 2243) for recovery for this accident, claiming, inter alia, "possible aggravation of prior back injury."

4. Plaintiff and his wife testified that she rubbed him and gave him baths for his back.

5. It is noted that plaintiff was well enough to work 6 hours on March 27, 8 hours on March 28, and 12 hours on March 29 (see D–1).

earnings ($1080.00), and compensation for pain, suffering, injury and inconvenience (N.T. 30–33 of Document No. 31). Also, the jury was advised that it might also accept the plaintiff's claim for loss of earnings of $766.00 in 1958, $806.00 in 1960, and $849.00 in 1961 (N.T. 38 of Document No. 31). The trial judge explained that the jury must consider whether plaintiff would have future medical expenses, loss of earning capacity in the future, and future pain, suffering, injury and inconvenience, substantially caused by the May 1957 accident, or whether these items were caused by the degenerative arthritis existing prior to the accident of May 1957, as testified to by defendant's doctor (Dr. Beller) (N.T. 33–34 of Document No. 31).

In discussing the evidence on this point, the court said:

"Now, as I remember it, Dr. Beller said, 'There is a degenerative arthritis here which is the result of a man who has spent his life doing hard work, and this had super-imposed upon it this fall, and this caused him pain and suffering, this caused him disability for ten weeks; but by the time 1959 had come around and I examined him, that had all been cured, and this subsequent pain and suffering which he is having, which is real pain, is due to the degenerative arthritis and not to the accident.'

"Now, of course, Dr. Myers says completely to the contrary. His opinion is unequivocal, that all this pain and suffering, the necessity for this operation, which is going to be held on May 16, according to the plaintiff, all results from this accident of May, 1957. You have got to consider all the evidence on the point. (N.T. 35–36)

\*    \*    \*    \*    \*    \*

"Now, if you accept Dr. Myers, you do not have to bother about all this. If you accept Dr. Beller, then you have got to consider the extent to which any of these continuing harms and damages for the plaintiff after 1959 were substantially caused by this accident. You have got to consider the testimony of those doctors. You have got to decide which doctor is more persuasive to you, which one of them would you like to have as your doctor, which one gives you confidence. Consider that, and all their testimony on the stand, taken in the light of all the testimony in the case, including Dr. Erdman's testimony. You remember Dr. Erdman, although not an orthopedist, testified unequivocally to the tests which he had performed, and they led him to the conclusion that this damage was in the L5–S–1 area, and that the plaintiff had to have the operation or he would be threatened with the possibility of paralysis.

"Now, as I remember Dr. Beller, he did not find that the plaintiff was in such grave straits, and the defendant argues to you that here this man worked perfectly well—and you will have the work records out with you—did a lot of work every week until just before this trial when he went to see his doctors for the check-up so they could give you the last word, and then suddenly he stops working completely and says he cannot work any more in the future. That is Dr. Erdman's testimony. He would not have him work until he at least had his myelogram. It is Dr. Myers' testimony that this results from the accident, and Dr. Beller himself concedes that the operation, if it goes forward, the fusion operation, would only have a 50 per cent chance of success, as I remember his testimony." (N.T. 37–38).

In his argument to the jury (N.T. 1–3 of Document No. 33), counsel for plaintiff had relied on the following sentence in an x-ray report of May 13, 1957 (P–1) as justifying an inference that x-rays taken at that time, which the hospital representative testified could not be

found at the time of trial, did not show the narrowing of the disc spaces and the degenerative conditions relied on by defendant's doctor which were observable in 1959 x-rays:

"Examination of the lumbar spine including the lumbo-sacral and sacro-iliac articulations reveals no evidence of fracture."

Counsel for plaintiff argued to the jury that defendant's doctor had testified that such narrowing and degenerative arthritis as were shown in the 1959 x-rays were a very significant condition in treating a patient who had had a fall such as plaintiff's and, hence, would have been indicated on this May 1957 report if present.

At the end of the charge, plaintiff objected that the court, in the above-quoted portions (pages 5 & 6 above) of its reference to the medical testimony, had not referred to the absence from the May 13, 1957, x-ray report of any reference to narrowing of the disc spaces or degenerative arthritis (N.T. 57 and 64–65 of Document No. 31). Defendant's counsel objected to the trial judge making any comment on the x-ray report of May 13, 1957, since the report did not state what the x-rays showed, "so I do not think it is justifiable to say that the X-rays showed there wasn't anything wrong with his back, and I do not think that in the present posture of the case that that is something that ought to be discussed anymore" (N.T. 60 of Document No. 31). The trial judge had emphasized to the jury that it was their memory of the testimony that controlled and that it was their function to evaluate and determine the significance of the evidence (N.T. 3–4 of Document No. 31).

In his supplemental charge, the trial judge pointed out, " * * * I have not and could not possibly in the time that I have to charge you go over every possible factual situation which you might find" (N.T. 69–70 of Document No. 31).

■ Under the circumstances, the refusal of the trial judge to repeat the argument of counsel for plaintiff (see pages 1–3 of partial transcript filed as Document No. 33) on a point requiring the jury to draw an inference, as opposed to direct testimony, was at most harmless error under the terms of F.R.Civ.P. 61. Counsel for plaintiff argued to the jury for almost an hour and his rebuttal continued for almost a half hour (see page 3 of Document No. 33), so that he had ample opportunity to present this argument to the jury.

■ It seems clear that the modest verdict resulted from the jury's refusal to accept the story of the plaintiff's suffering pain every time he worked in the light of the substantial number of hours of heavy work he had performed in 1960, 1961, and up to and including April 21, 1962, which was within two weeks of the trial. This court has no power to overrule this finding of the jury, which is supported by testimony (testimony of defendant's doctor) that the jury was entitled to accept.

## II. Burden of Proof

The language of the charge on the burden of proof (N.T. 53–55 of Document No. 31) did not constitute reversible error. See Burch v. Reading Co., 240 F.2d 574 (3rd Cir.1957), cert. den. 353 U.S. 965, 77 S.Ct. 1049, 1 L.Ed.2d 914 (1957).[6]

6. The other alleged errors involving damage issues do not have merit. If counsel for plaintiff had wished Dr. Erdman to testify on the basis of the x-ray report of 5/13/57, he could have asked a hypothetical question based on the contents of that report. No request was made to the trial judge during the trial giving any reason for a prompt ruling on the admissibility of P–1. (See A–2 to A–10 of Document No. 33, showing that the first time counsel for plaintiff mentioned any possible desire to use P–1 during Dr. Erdman's testimony was at A–9—A–10 of Document No. 33, after Dr. Erdman had completed his testimony.) Also, Dr. Erdman could have been recalled to the stand if counsel for plaintiff had indicated this was a matter of importance. Any criticism of counsel's statements of law to the jury by the trial judge (see pp. 8–9 of Document No. 32) was not prejudicial in the light of the language in the charge on this subject (N.T. 14–15).

### III. Contributory Negligence

Plaintiff contends that the trial judge erred in his charge to the jury in stating that the negligence of plaintiff operates to reduce the damages in this maritime personal injury case if it contributes in any part to the injuries. The plaintiff contends that before a jury can invoke the maritime doctrine of comparative negligence, and thus reduce proportionately the injured plaintiff's recovery, the jury must find that plaintiff's contributory negligence was a proximate cause of, or a substantial factor in, producing his injuries. At N.T. 44, the court charged:

"If the plaintiff was negligent; in other words, if he did not act as a reasonably prudent man, properly considerate of his own safety, or failed to take some action which such a reasonably prudent man would have, and this negligence contributes in any degree to the accident, then you must answer this question 'Yes.' Now, to this extent you must notice that it is different from questions 1(a) and 1(b). For a defendant to be liable —or, 1(b), particularly—his negligence must be a substantial factor in causing the accident, but for the plaintiff to have his damages reduced for his own negligence, it must only contribute in some part. If it contributes in any part, his negligence, to the accident then you answer this question 'Yes' and you go on to 4 and put in what percentage it contributed to the accident, as opposed to the over-all fault of both parties; that is; both the defendant and the plaintiff."

The legal issue involved is apparently a novel one, never raised or discussed in any reported decision of a Federal Court. Although plaintiff cites certain United States Supreme Court decisions, these cases are not applicable enough to provide a definite answer to the legal issue, as defined below.[7]

There is no doubt that the Pennsylvania Supreme Court has held that the jury can find that the principle of contributory negligence applies where the plaintiff's own acts or omissions contributed even in the slightest degree to his injuries.[8]

### A. Federal Maritime Tort Decisions and cases cited therein.

Plaintiff, in his brief, relies on Pope & Talbot, Inc. v. Hawn, and Kermarec v. Compagnie Generale Transatlantique.

Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953), stands for four propositions concerning contributory negligence:

1. Plaintiff's contributory negligence is not a complete bar to his recovery.

2. In admiralty, contributory negligence may mitigate, but does not bar, recovery for personal injuries.

3. Since plaintiff in Pope & Talbot was injured on a ship in navigable waters, the basis of his action is a maritime tort, and his rights are not determined by state law.

4. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 does not require a different result.

Thus, all Pope & Talbot decides is that under admiralty law, contributory negligence is not a complete bar. There is no discussion of the relationship (i. e., proximate cause, substantial factor, or contributing in the slightest degree) between the plaintiff's negligence and his resultant injuries.

7. Defendant, in his brief, stated, "After diligent search, we have been unable to find any cases which say that the court is required to advise the jury that contributory negligence of such character as to effect mitigation of the damages, must be a 'substantial factor' in causing the harm."

Third-party defendant, in his brief, stated "We have had the opportunity of reviewing the Briefs filed by the other parties and also report inability to uncover any Federal case on the point raised."

8. See Crane v. Neal, 389 Pa. 329, 132 A.2d 675 (1957).

Also, Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959), cited by plaintiff, does not answer the problem. At 629 of the opinion, 79 S.Ct. at 409, Justice Stewart, speaking for the court, stated: "In instructing the jury that contributory negligence on Kermarec's part would operate as a complete bar to recovery, the district judge was clearly in error. The jury should have been told instead that Kermarec's contributory negligence was to be considered only in mitigation of damages."

In this case, the jury was instructed [9] that negligence of the plaintiff which contributed to the accident even in the slightest degree was contributory negligence, but, contrary to the charge of the District Court in Kermarec, the trial judge instructed the jury that contributory negligence would automatically invoke the maritime doctrine of comparative negligence.

■ Under the doctrine of Pope & Talbot and Kermarec, supra, it is clear that the law of Pennsylvania does not apply.

B. *Civil and Common Law*

■ While it is generally true that maritime law is an outgrowth of the civil law, there are maritime legal principles, such as the instant one, which may find their source in the common law. The coverage of admiralty and maritime law in Article III, Section 2, of the United States Constitution is generally determined by considering the law as it existed in the maritime world at the time of the adoption of the Constitution and the reasons for providing such jurisdiction in the federal courts.[10] An excellent review of the common law of contributory negligence is found in 28 Halsbury's Laws of England, 87 (3rd Ed., 1959).

Concerning the effect of contributory negligence, it is stated at page 87 that:

"In an action for injuries arising from negligence it was a defense at common law if the defendant proved that the plaintiff, by some negligence on his own part, *directly contributed* to the injury in the sense that his negligence formed a *material part of the effective cause* thereof. When this is proved the plaintiff's negligence is said to be contributory." (Emphasis supplied.)

The leading English case is Tuff v. Warman, 19 English Ruling Cases 194, 26 L.J.C.P. 263–7 and 27 L.J.C.P. 322–3 (1857). This is a collision case. The trial judge charged: " * * * if the plaintiff *directly contributed* to the accident you should find for the defendant; * * *." (Emphasis supplied.) The jury found for the plaintiff and the charge was affirmed on appeal. In his opinion filed with the order discharging the Rule for New Trial, Cockburn, C. J., speaks of "the plaintiff's negligence [having] contributed directly to the mischief." Williams, J., in his opinion filed at that time, talks of "the fault of the plaintiff [being] the proximate cause of the collision. The opinion of the Exchequer Chamber, where the case was brought on appeal, contained this language (p. 201 of 19 English Ruling Cases):

"It appears to us that the proper question for the jury in this case, as indeed in all others of a like kind, is, whether the damage was occasioned entirely by the negligence or improper conduct of the defendant, or whether the plaintiff himself so far contributed to the misfortune by his own negligence or want of ordinary and common care and caution, that, but for such negligence or want of ordinary care and cau-

---

9. At N.T. 43 (of Document No. 31), this language appears in the charge (see, also, N.T. 47 and 48 of Document No. 31):

"Now, any negligence which you might find on the part of the plaintiff does not prevent him from recovering, but as I

will explain to you under question 4, it merely reduces the amount of damages he recovers."

10. 1 Benedict on Admiralty, pp. 1 & 2 (6th Ed. 1940).

tion on his part, the misfortune would not have happened. In the first case the plaintiff would be entitled to recover; in the latter not, as but for his own misconduct the misfortune would not have happened. Mere negligence or want of ordinary care or caution would not, however, have disentitled him to recover, unless it was such that but for the negligence and want of ordinary care and caution the misfortune would not have happened; * * *."

 Thus, a review of the common law indicates that a plaintiff's act or omission must at least contribute directly to his harm in order to constitute contributory negligence.

In view of (1) the lack of any American decision considering this issue, (2) the law of England concerning the broad, general rules of contributory negligence, (3) the Restatement of Torts' concept of "a legally contributing cause" and a "substantial factor,"[11] and (4) the great desire for nationwide uniformity which is deep-rooted in American admiralty and maritime law,[12] the trial judge is of the opinion, although the question is not free from doubt, that he was in error in charging the jury on contributory negligence without applying the requirement of proximate cause.

In the event that the defendant and third-party defendant do not file with the Clerk of this court within thirty days a written agreement to the amendment of the judgment entered on May 7, 1962 (Document No. 26) to the amount of $4,758.00 with costs (interest will be payable from May 7, 1962), a new trial will be granted limited to the issue of contributory negligence (special questions 4 and 5). If such a written agree-

ment is filed, an order will be entered, denying the plaintiff's Motion For A New Trial (Document No. 29) and modifying the judgment of May 7, 1962 (Document No. 26) accordingly. See Memorandum Opinion of 5/28/57 (pp. 5 and 6) in Elisabeth M. Byrne, Administratrix, etc. v. Brooks et al., Civil Action No. 19,327.

---

11. See Restatement of Torts, § 465, which provides:
"The plaintiff's negligent exposure of himself to danger or his failure to exercise reasonable care for his own protection is a legally contributing cause of his harm if, but only if, it is a substantial factor in bringing about his harm and there is no rule restricting his responsi-bility because of the manner in which his conduct contributed to his harm."

12. See Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953); Garrett v. Moore-McCormack Co., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942); and Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959).