**AMERICAN PRESIDENT LINES, LTD.,**
Appellant,

v.

**John REDFERN, Appellee.**
No. 19187.

United States Court of Appeals
Ninth Circuit.
May 7, 1965.
Rehearing Denied June 28, 1965.

See also 228 F.Supp. 227.

Graydon S. Staring, Frederick W. Wentker, Jr., Lillick, Geary, Wheat, Adams & Charles, San Francisco, Cal., for appellant.

Martin J. Jarvis, Jarvis, Miller & Stender, San Francisco, Cal., for appellee.

Before CHAMBERS, POPE and KOELSCH, Circuit Judges.

KOELSCH, Circuit Judge.

This is an appeal by the American President Lines, Ltd. (appellant) from a decree of the District Court, entered in an admiralty suit, awarding John Redfern, the libelant, damages for personal injuries sustained while working as an oiler aboard its vessel the SS PRESIDENT HOOVER.

The accident occurred on the afternoon of May 24, 1961, while the HOOVER was putting to sea from the port of Manila. Marcus J. Bommersbach, the watch officer in the engine room, ordered Redfern to "go down and change from high suction to low suction," an operation that required the opening of the gate valves, located on either side of the vessel near the bottom of the hull, and the closing of a corresponding pair of valves, located at a higher level. On the HOOVER these valves were very large and were regulated by turning manually the waist-high, 30 inch diameter wheel with which each was fitted. Redfern started with the lower portside valve. On the first two attempts he was unable to budge the valve, but with the third pull on the wheel he finally succeeded in breaking it loose. He immediately felt a "pop" in his left shoulder and began to experience excruciating pain. Medical examination shortly afterward disclosed injury to the left collarbone. Conservative treatment was given, but to no avail and ultimately the entire bone had to be removed.

Redfern submitted his claim under a libel framed in two counts; one containing allegations appropriate to a theory of negligence under the Jones Act, and the other of unseaworthiness under general maritime law. Following trial, the district judge, in a written memorandum, announced his decision in favor of Redfern, predicated upon breach of the warranty of seaworthiness; he fixed Redfern's recovery at $40,478.00, explaining that $8,000.00 of that amount represented special damages for loss of wages.

Redfern's proposed findings were adopted without any changes by the

court. They contain many confusing and ambiguous statements; they go beyond the clear import of the memorandum and purport to rest liability not only upon unseaworthiness but upon the alternative ground of negligence as well, and some of the findings are so arranged that it is impossible to determine with any degree of certainty whether they relate commonly to both counts or are responsive to one or the other respectively.

But with all of their faults, and they are not inconsiderable, the formal findings in our estimation can legitimately be construed to support the factual conclusion that the condition of the HOOVER, which caused Redfern's injuries, was one of unseaworthiness.[1]

In substance, the critical findings are that opening a stuck sea valve, like the one involved in this case, is a hazardous operation, unless performed by two men or a single man using adequate tools; that appellant ordered Redfern, alone and without any assistance, mechanical or otherwise, to open this valve at a time when it was in fact stuck; that such valves have a tendency to stick; that the stuck valve and lack of assistance rendered the HOOVER unseaworthy; and that Redfern sustained personal injuries because of the dangerous condition.

We of course are aware that while an owner has an absolute duty to provide a ship and appurtenances that are seaworthy, nevertheless he is not an insurer of the safety of the crew and the measure of his duty is a ship reasonably fit for service. And we fully agree with appellant that generally the determination of what is reasonable rests upon a comparison of the practices that were followed and the conditions that appear in a particular case with those customarily followed and found in the industry. We part company with appellant at the point where the test is to be applied. Appellant singles out the offending valve

as the sole basis for the trial court's determination, and dwells upon the fact that the valve was not worn or defective and behaved no differently from valves generally, which oftentimes bind or stick due to causes over which shipowners have no control; thus, argues appellant, the valve even though stuck was within the normal range of maritime appliances and hence not unseaworthy. Appellant then proceeds to "summarily" dismiss the finding that Redfern was assigned to perform the task alone and without any assistance, saying that the finding "is not to be taken seriously" and "evidently is a charge not of any condition, defective or otherwise, of the vessel or her appurtenances, but rather of inaction by the vessel's officers, which has already been dealt with under the heading of Negligence."

Appellant cannot avoid the force of these findings by such casual reference. The court, as fact finder, was required to consider collectively all factors relevant to the question of the HOOVER'S condition, in order to reach a valid conclusion. The valve could not be separated from its surroundings and viewed separately without unduly distorting its significance, and thus leading to an answer of doubtful accuracy. Instead, the valve had to be considered in its proper perspective, and these findings aid materially in setting the scene for the ultimate finding. In short, we conclude that the findings are germane to the issue and serve a decidedly necessary purpose.

A stuck sea valve, the trial judge found—and the finding is supported by substantial evidence—is suitable only if operated by two men; otherwise, it constitutes a dangerous condition. Nor was such an occurrence so unexpected or isolated as to be "completely unforeseeable" as in Morales v. City of Galveston, 370 U.S. 165, 171, 82 S.Ct. 1226, 8 L.Ed.2d 412 (1962), and hence not a peril to be

---

1. No useful purpose would accordingly be served by a discussion of the negligence finding, for as well said by the Fifth Circuit in Clevenger v. Star Fish & Oyster Co., 325 F.2d 397, 402 (5th Cir. 1963)

"When the action for unseaworthiness is available, its notion of liability swallows up any notion of maritime negligence, no matter how leniently conceived."

guarded against; here, the evidence was all to the effect that on shipboard all valves have a tendency to stick on occasion, due to temperature changes, the manner of their construction and various other factors. In this setting, we are satisfied that the court was justified in determining that the HOOVER was not reasonably fit for service because she was improperly manned—"a classic case of an unseaworthy vessel." June T., Inc. v. King, 290 F.2d 404, 407 (5th Cir. 1961).

■■ The trial court's factual determination that Redfern was not guilty of contributory negligence in attempting to open the valve is of course conclusive on appeal unless "clearly erroneous." [2]

■ Here, the evidence viewed most favorably to Redfern shows that, although he knew what sea suction valves were and on occasion had observed others open and close them, apparently without incident, he had never operated, or assisted in their operation prior to the time of the accident. There was thus little tending to make the situation he faced appear hazardous. Moreover, his order came from a superior, conceivably a man familiar with the characteristics of such valves and knowledgeable in the manner of their safe operation. While it is true the size of the valve and its refusal to yield to Redfern's initial efforts may be regarded as forecasting harm, still we cannot conclude that its likelihood was so obvious to a man of reasonable prudence as to make the issue one of law.

Appellant's remaining point concerns that portion of the decree awarding Redfern special damages for loss of earnings. Pertinent to the matter are the court's findings that on May 24, 1961, the date of the accident, Redfern "was earning and was capable of earning Four Thou-sand, Five Hundred Dollars per year," and that he "sustained an actual wage loss * * * of $8,000.00." The evidence showed, without dispute, that Redfern was paid for the entire month of May, 1961 and that he secured steady employment as a bartender beginning about February 1, 1963. Thus, the critical period is from June 1, 1961 through January, 1963, that is one and two-thirds years. Calculated at the annual rate, Redfern's earnings would have amounted to $7,500.00, rather than $8,000.00; additionally, the uncontradicted evidence showed that during the period Redfern was employed on two occasions as a crewman on other vessels where he rendered services for which he received wages amounting to $1,819.66. Redfern urges that the allowance was not excessive, because the court was entitled to include as wages a crewman's board and room, the value of which he argues was a matter of judicial notice.

■ Passing the latter question and disregarding the fact that appellee is attempting to impeach a material finding, we nevertheless can only conclude that the sum allowed was excessive by $2,-319.66 ($500.00 + $1,819.66), and that the decree must be modified accordingly.

The $4,500.00 found to represent the annual rate of Redfern's earnings, was clearly a composite, for the evidence was that Redfern's earnings consisted of extras in addition to a fixed monthly base pay which alone would not have amounted to $4,500.00. In this state of the record, we conclude the court granted such extras as it considered were properly allowable, but made an error in computing the total loss.

The decree is modified by reducing damages to $38,158.34 and, as so modified, is affirmed.

2. "Contributory negligence is not a defense to a suit brought either under the Jones Act or under the maritime law for injuries attributable to negligently defective equipment. Under both it is ground only for apportionment of the damage * * *" Beadle v. Spencer, 298 U.S. 124, 131, 56 S.Ct. 712, 715, 80 L.Ed. 1082 (1936).