**Alice M. CURRY et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 49042.**

United States District Court,
N. D. California.

May 18, 1971.

---

———————

Martin J. Jarvis, Jarvis, Miller & Brodsky, Inc., San Francisco, Cal., for plaintiffs.

James L. Browning, Jr., U. S. Atty., Lawrence F. Ledebur, Chief, Admiralty and Shipping Section, Department of Justice, for defendant; Lillick, McHose, Wheat, Adams & Charles, John W. Ford, Tristam B. Brown, David W. Condeff, San Francisco, Cal., of counsel.

## MEMORANDUM OF DECISION RE LIABILITY

### I

#### *Introduction*

GEORGE B. HARRIS, Senior District Judge.

This is an action brought by the personal representative and executrix of the estate of Francis David Curry. Jurisdiction is in Admiralty and recovery is claimed under the Jones Act (46 U.S.C. § 688), the Public Vessels Act (46 U.S.C. § 781 et seq.), the Suits in Admiralty Act (46 U.S.C. § 741 et seq.), the Death on the High Seas Act (46 U.S.C. § 761 et seq.), and under General Maritime Law.

The cause came on regularly for trial on and after the 31st day of August, 1970, and continued thereafter for a number of trial days. Oral and documentary evidence was introduced during the course of the trial and the parties filed written briefs at the conclusion thereof. The court duly considered the facts and the law and, following oral argument, the cause was submitted for decision on the issue of liability, reserving the question of the amount of damages for subsequent proceedings and decision as indicated below. Accordingly, the court now files herein its memorandum of decision embracing the findings of fact and conclusions of law on said issue of liability.

This memorandum will not deal with all the potential legal issues in the case nor will it attempt to recapitulate all the facts and lengthy testimony thereon, except where relevant to the several points under discussion.

### II

#### *Findings of Fact*

1. The SS COUNCIL BLUFFS VICTORY was a public vessel of the United States operated by the Maritime Administration, National Shipping Authority at all pertinent times.

2. The decedent was employed pursuant to written articles from July 6, 1967 to December 1, 1967 on defendant's vessel the SS COUNCIL BLUFFS VICTORY, as First Assistant Engineer.

3. The SS COUNCIL BLUFFS VICTORY has a 6,600 shaft horsepower plant with Allis-Chalmers 16 nozzle steam driven turbines. She was built in 1944 by California Shipbuilding at Long Beach, California.

4. Francis Curry died aboard defendant's vessel in the early morning hours of December 1, 1967 at which time the vessel was enroute from Sasebo, Japan, bound for San Francisco, California.

5. At the time of his death, decedent was a licensed Second Assistant Engineer with a First Assistant Engineer's permit given pursuant to temporary regulations.

6. Decedent is survived by his widow and five sons:

Alice M. Curry, born April 26, 1923;

Don Sanford, born May 20, 1942;

Michael David, born March 31, 1949;

Patrick Francis, born April 9, 1951;

Sean Thomas, born November 24,

1955; Robert Daniel, born December 8, 1958.

7. Francis D. Curry was given a pre-sign-on physical examination aboard the vessel in Port Chicago on or about July 6, 1967 by a doctor employed by the SIU-PMA medical center. No injury or illness was reported by Mr. Curry to the examining physician and the examination revealed no symptoms of current illness. Mr. Curry was passed to sail with the vessel.

8. Mr. Curry had previously taken a pre-sign-on physical examination for another of defendant's vessels in February, 1967, at which time he negatively responded in writing to the inquiry: "Have you ever had or been told you had asthma?" Decedent had a history of asthma dating back to 1951, diagnosed as acute.

9. Decedent first signed aboard the vessel at Port Chicago, California, on or about July 6, 1967, as First Assistant Engineer for one foreign voyage (V-7) to the Far East and return. Voyage #7 articles terminated at San Francisco, California on September 13, 1967.

10. Decedent again signed foreign articles for the succeeding voyage (V-8) on October 13, 1967. Said voyage articles terminated on December 5, 1967 at San Francisco, California, four days after decedent's death.

11. During the time Mr. Curry served aboard the SS COUNCIL BLUFFS VICTORY, the ship was unsafe and unseaworthy; she was not reasonably fit for her intended use in that she had an abnormal polluted engineroom atmosphere occasioned by defects and deficiencies in her boilers, appurtenances, engineroom equipment and ventilation system; she was also not reasonably fit for her intended use in that insufficient gear and inadequate and incompetent personnel were furnished to Mr. Curry for his required tasks, thereby subjecting him to excessive physical stress and strain during his service aboard said vessel.

12. During the time Mr. Curry served aboard the SS COUNCIL BLUFFS VIC-TORY the defendant was negligent in failing to furnish Mr. Curry with a reasonably safe place to work aboard said vessel; in negligently providing and maintaining the ship's boilers, appurtenances, engine-room equipment and ventilation system in a defective, deficient and hazardous condition; in negligently exposing Mr. Curry to an unreasonable hazard to his health by negligently providing him with an abnormal, polluted engine-room atmosphere in which to do his required work; and in negligently failing to furnish Mr. Curry with proper gear and adequate and competent help with which to do the work required of him with reasonable safety aboard the ship, thereby negligently subjecting him to excessive physical stress and strain during his service aboard said vessel.

13. The defendant's negligence and the unsafe and unseaworthy condition of defendant's ship in the foregoing respects contributed directly and proximately to the worsening of Mr. Curry's pre-existing respiratory condition which, coupled with his own contributory negligence as hereinafter set forth, proximately caused his death.

14. At some undetermined point during Voyage 8, Francis D. Curry developed a viral or bacterial infection. The vessel was docked at Sasebo, Japan, in November, 1967; during which time Mr. Curry thought he was sick. He went ashore on at least one occasion. While ashore in Japan, Mr. Curry purchased without a prescription some cannisters of Japanese labeled aerosol bronchial medications containing Isorpoteronol or Isopropyl drugs. These are sold in the United States by prescription only. When prescribed and used, patients are instructed that if one or two dosages do not provide relief to consult their physician immediately.

15. Decedent knew he was ill while the vessel was at Sasebo and he had ample time to obtain appropriate medical attention.

16. The vessel sailed from Sasebo, homebound on November 20, 1967, and Mr. Curry's physical condition failed to

improve; Mr. Curry did not advise his superiors of his illness nor seek any shipboard or shoreside professional treatment at any time prior to November 30, 1967.

17. At or about 0800 on November 30, 1967, Francis D. Curry was found by Third Assistant Engineer John Shelton while in his forecastle sitting up at his desk. Curry was unable to report for duty. Shelton immediately advised his superior officers of Mr. Curry's physical condition. The ship's Purser was immediately notified.

18. The vessel's medical officer, Purser Donald Wadel, obtained Mr. Curry's complaints and a history of coughing up copious amounts of phlegm, chills and fever for one week. On the afternoon of November 30, 1967 a portable oxygen breathing apparatus was brought in and utilized by Mr. Curry as needed to assist his labored breathing. Curry's recorded temperatures were sub-normal.

19. Additional cylinders of oxygen were rigged up in the passageway outside Mr. Curry's forecastle.

20. Francis D. Curry's illness terminated in his sudden death at 0303 hours on December 1, 1967 at the age of 43. He was never comatose and was alert until he expired. Mr. Curry himself treated his illness up to and within minutes of death by administering frequent dosages from the Isorpoteronol inhalaators in his possession.

21. Francis Curry failed to act as an ordinary, prudent person in the same or similar circumstances during his service as a Marine Engineer aboard defendant's ship by reason of his failure to reveal his pre-existing asthma condition at the time of his signing on for Voyage 8; by reason of his failure to seek medical aid or treatment while at Sasebo or any time other than the date of his death; and by his abusive and excessive administration of dosages from the Isorpoteronol inhalators in his possession.

22. Death was proximately caused by the excessive use of said Isorpoteronol, pre-existing asthma, and decedent's failure to report himself ill while the vessel was at Sasebo in November, 1967, coupled with the defendant's negligence and/or the unseaworthy condition of the vessel as hereinabove set forth.

23. Following his death decedent was buried at sea pursuant to family instructions and there was no autopsy.

24. Accordingly, decedent Francis Curry's contributory negligence was a proximate cause of his death and contributed substantially thereto to the extent of 50%, or one-half, and the said negligence of defendant and/or the unseaworthiness of the vessel contributed 50%, or one-half, thereto.

### III

### *Discussion*

#### 1. *Defendant's Liability*

■■ The first major issue is whether the defendant is liable—under any theory—for the damage suffered here by plaintiff's decedent. Unless defendant committed acts or omissions amounting to negligence or unseaworthiness *and* such was a cause of decedent's injuries, no recovery can be had therefor. Decedent's own conduct, including his asserted contributory negligence, is irrelevant here to determining the liability of defendant in the first instance.

■ Plaintiff asserts that defendant is liable under the theory of negligence (emanating from statutory provision) and/or the theory of unseaworthiness. Although many of the cases cited by plaintiff rely upon negligence principles as developed under the Jones Act, it should be noted that the concept of unseaworthiness effectively swallows up the negligence approach because it is absolute and does not require a showing of fault. *See* American President Lines, Ltd. v. Redfern, 345 F.2d 629, 631 n. 1 (9th Cir. 1965). *See generally* Gilmore & Black, The Law of Admiralty § 6–37 at 315 (1957); R. Foley, "A Survey of the Maritime Doctrine of Seaworthiness," 46 Ore.L.Rev. 369, 396–397

(1967); Note, "The Doctrine of Unseaworthiness in the Lower Federal Courts," 76 Harv.L.Rev. 819, 823 (1963).

Until recently the unseaworthiness concept would support an action for all personal injuries except wrongful death. Last term, however, the Supreme Court held that a cause of action for wrongful death can be based on a finding of unseaworthiness. Moragne v. States Marine Lines, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). The recent case of Epling v. M. T. Epling Company, 435 F.2d 732, 736 (6th Cir. 1970) stated that Moragne had in fact created a new federal remedy for the wrongful death of a seaman.

Accordingly, the analysis following will be directed primarily to the issue of unseaworthiness; of course, if defendant is guilty of negligence, its vessel was a fortiori unseaworthy.

## A. The Scope of Unseaworthiness

■ The law is well settled that the owner of a vessel has a duty to provide a seaworthy vessel and appliances, which duty is absolute, nondelegable and not conditioned on fault or notice. Clevenger v. Star Fish & Oyster Company, 325 F.2d 397, 400 (5th Cir. 1963). See also Moragne, supra, 398 U.S. at 399, 90 S.Ct. 1772; Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 549, 80 S.Ct. 926, 4 L.Ed. 2d 941 (1960); Hudson Waterways Corporation v. Schneider, 365 F.2d 1012, 1014 (9th Cir. 1966); Petterson v. Alaska S.S. Co., 205 F.2d 478, 480 (9th Cir. 1953), aff'd per curiam, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798 (1954).

■■ The vessel owner has the absolute duty to provide a seaworthy vessel not only at the beginning of a voyage, but such duty continues throughout the voyage. Misurella v. Isthmian Lines Inc., 215 F.Supp. 857, 860 (S.D.N.Y. 1963), aff'd 328 F.2d 40 (2d Cir. 1964). Therefore, liability is the same whether the unseaworthy condition is temporary or permanent. Mitchell v. Trawler Racer, Inc., supra, 362 U.S. at 550, 80 S.Ct. 926; 76 Harv.L.Rev., op. cit. Even momentary unseaworthiness may expose the vessel owner to liability. See Hanks v. California Company, 280 F.Supp. 730, 739 (W.D.La.1967).

■ The concept of unseaworthiness is, of course, relative and varies from case to case. The duty of seaworthiness requires the vessel owner to furnish a vessel and appurtenances (including a crew) reasonably fit for their intended use. Mitchell, supra, 362 U.S. at 550, 80 S.Ct. 926. The vessel owner is not, however, an insurer of the safety of the crew. American President Lines, Ltd., supra, 345 F.2d at 631.

■ The evidence here as to the seaworthy condition of the vessel on which decedent met his death is in conflict. Although defendant has attempted to meet and explain every asserted basis of unseaworthiness attributed to the vessel, the record supports a finding of unseaworthiness. With respect to the condition of the vessel, plaintiff's main contentions are that the ship's boilers and engineroom were unsafe; that the air therein was polluted and noxious; and that the ship was under- and inadequately manned.

The general physical condition of the ship has been the subject of much evidence and its seaworthiness is therefore dependent upon the facts. The contention as to the crew rests on the assertion that two of the fireman watertenders were incompetent and inattentive; that there were two newly licensed and inexperienced watch engineers; and that there were two wipers short in the engineroom and the remaining wiper was lame in one eye.

■ No distinction is made between unseaworthiness of equipment and that of personnel. Waldron v. Moore-McCormack Lines, 386 U.S. 724, 727, 87 S.Ct. 1410, 18 L.Ed.2d 482 (1967). The shipowner is under a duty to provide a crew sufficient in numbers, but also competent for the duties it may be called upon to perform—including provision for any emergency which is likely to happen. Petition of United States, 303 F.Supp. 1282, 1304 (E.D.N.C.1969), aff'd 432 F.

2d 1357 (4th Cir. 1970). *See also Waldron, supra;* Dillon v. M. S. Oriental Inventor, 426 F.2d 977, 979 (5th Cir. 1970), cert. den. 400 U.S. 903, 91 S.Ct. 140, 27 L.Ed.2d 140 (1970)[1] *American President Lines, Ltd., supra,* 345 F.2d at 632; 46 Ore.L.Rev., *op. cit.* at 377–378; 24 Wash. & Lee L.Rev. 114, 119 (1967). The failure to provide an adequately or properly manned crew is a "classic case of an unseaworthy vessel," American President Lines, Ltd. v. Welch, 377 F.2d 501, 504 (9th Cir. 1967), cert. den., 389 U.S. 940, 88 S.Ct. 294, 19 L.Ed.2d 290 (1967); June T., Inc. v. King, 290 F.2d 404, 407 (5th Cir. 1961), and may constitute negligence as well as unseaworthiness. *Petition of United States, supra,* 303 F.Supp. at 1304.

### B. *Causation*

Finding defendant's vessel and/or crew was unseaworthy (or negligent), defendant would still not be liable for the injuries suffered by plaintiff unless such unseaworthiness or negligence was a *cause* of such injuries. This question of causation is a critical one. Plaintiff contends that conditions aboard defendant's vessel coupled with the strain placed on decedent by his unduly burdensome assignments aggravated his pre-existing physical disability and thus caused his death. Defendant, on the other hand, contends that decedent's own condition and conduct were the sole cause of his death.

Some authorities confuse the necessity of proving causation in this context with a finding of plaintiff's contributory negligence; i. e., they say if the plaintiff's own contributory negligence is the sole cause of his injury he may not recover therefor. See, e. g., Fleming v. American Export Isbrandtsen Lines, Inc., 318 F.Supp. 194, 198 (S.D.N.Y.1970); Nor-

ris, The Law of Seamen, vol. 2, § 627 at 731 (2d ed. 1962).

Plaintiff must, then, show that the negligence and/or unseaworthiness complained of was a proximate cause[2] of his injury or illness. Cumberland v. Isthmian Lines, Inc., 282 F. Supp. 217, 222 (E.D.La.1967). The test of causation is the same as that adopted by the Supreme Court for the Federal Employers' Liability Act (FELA) in Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed. 2d 493 (1957):

> Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. [Footnotes omitted.]

Since liability under the Jones Act is the same as that established by Congress under the FELA, the Supreme Court has adopted the *Rogers* statement of causation with respect to Jones Act proceedings. Ferguson v. Moore-McCormack Lines, 352 U.S. 521, 523, 77 S.Ct. 457, 1 L.Ed.2d 511 (1957). *See also* Clark v. Central States Dredging Co., 430 F.2d 63, 66 (8th Cir. 1970); Mroz v. Dravo Corporation, 429 F.2d 1156, 1163 (3d Cir. 1970).

The liberality in the standard of causation noted above reflects the belief of courts that the Jones Act and FELA are to be liberally construed in respect of proof of negligence and causation, even if speculation or conjecture is necessary. See McDonough v. Buckeye S. S. Co.,

---

1. The Court in *Dillon* noted in passing that the unseaworthiness doctrine is a growing concept, constantly undergoing redefinition as the risks of those protected are enlarged by changing technology and shipboard technique. 426 F.2d at 979.

2. For definitions of proximate cause in this context, see Manning v. M/V "Sea Road," 417 F.2d 603, 610 n.9 (5th Cir. 1969); McLeod v. Union Barge Line Co., 95 F.Supp. 366, 369 (W.D.Pa.1951), aff'd per curiam, 189 F.2d 610 (3d Cir. 1951).

103 F.Supp. 473, 477 (N.D.Ohio 1951), aff'd per curiam, 200 F.2d 558 (6th Cir. 1952). No case cited to the court has specifically adopted the *Rogers* statement of causality where the defendant's liability has been predicated solely on unseaworthiness (rather than negligence), but no good reason would call for a distinction here, and the lack of authority may be attributable to the fact that an unseaworthiness claim is invariably tied to a negligence claim.

■ Under the *Rogers* standard, plaintiff need not show that the conditions aboard decedent's vessel, or the stresses and strains placed upon decedent, were the sole cause or main cause or even a significant cause of his injuries; they need only have been a contributing cause.

■ The problem of causation raises another question: what is the significance of the fact that defendant's actions (or omissions) aggravated a pre-existing condition rather than produced an "original" injury? The general rule is that the tortfeasor takes his victim as he finds him. As the Ninth Circuit said in Sweet Milk Co. v. Stanfield, 353 F.2d 811, 813 (9th Cir. 1965):

> We recognize the rule that a tortfeasor is liable to the extent that his wrong aggravates a pre-existing disability, but in such case, he is liable only to the extent of the aggravation. He is not liable for the pre-existing condition as such. It is also true that one may be afflicted with a latent disability which is activated by a tortfeasor's wrong. In such a situation, the wrongdoer may be held responsible for the disability produced by his wrong even though so great a disability would have not been produced in one not previously afflicted.

*See also* Tabor v. Miller, 389 F.2d 645, 647–648 (3d Cir. 1968), cert. den., 391 U.S. 915, 88 S.Ct. 1810, 20 L.Ed.2d 654 (1968); Thomas v. United States, 327 F.2d 379, 381 n. 5 (7th Cir. 1964); United States v. Fotopulos, 180 F.2d 631, 640 (9th Cir. 1950); Kegel v. United States, 289 F.Supp. 790, 795 nn. 9, 10 (D.Mont. 1968) (The negligent actor is liable for harm increased in extent by another's unforeseeable physical condition); W. Seavey, "Principles of Torts," 56 Harv. L.Rev. 72, 91 (1942).

The "thin skull" plaintiff doctrine has been recognized in the employment injury field, as under the Longshoremen's and Harborworkers' Act, Robinson v. Bradshaw, 92 U.S.App.D.C. 216, 206 F. 2d 435, 437–438 (1953), cert. den. 346 U.S. 899, 74 S.Ct. 226, 98 L.Ed. 400 (1953); Pacific Employers' Ins. Co. v. Pillsbury, 61 F.2d 101, 103 (9th Cir. 1932) [3]; Brown-Pacific Maxon Co. v. Cardillo, 91 F.Supp. 968, 970 (S.D.N.Y. 1950); and other employees' compensation acts, *see e. g.,* Hoage v. Employers' Liability Assur. Corporation, 62 App. D.C. 77, 64 F.2d 715, 717 (1933); Trudenich v. Marshall, 34 F.Supp. 486, 488–490 (W.D.Wash.1940). In *Trudenich* the court wrote,

> The employer takes the workman, to use a term by which the mercantile world designates damaged goods, 'as is.'
>
> If he is suffering from a disease, and the ordinary exertion incidental to the work brings on an attack or acceleration, or aggravation of it, we have a compensable injury.
>
> And this, although the exertion *would not have harmed at all* a person not suffering from the particular disease. 34 F.Supp. at 488–489. [Emphasis in original.]

The seaman, too, is protected under this rule, and maintenance and cure may be awarded even where the seaman has suffered from a pre-existing illness.

---

3. The court in *Pacific Employers'* noted that,

> The employer accepts the employee subject to physical disabilities, which may make the latter more susceptible to injury than would be a stronger or more robust person; and the former may suffer an accidental injury where his more fortunately constituted fellow workman may suffer no injury at all. 61 F.2d at 103.

McCorpen v. Central Gulf Steamship Corporation, 396 F.2d 547, 548 (5th Cir. 1968), cert. den., 393 U.S. 894, 89 S.Ct. 223, 21 L.Ed.2d 175 (1968) ; 3 A.L.R.3d 1082 Anno. Maintenance—Pre-Existing Illness.[4]

### 2. *Plaintiff's Contributory Negligence*

 In view of the foregoing principles, the specific issues of negligence and unseaworthiness must be decided adversely to the defendant. The Court's findings in this regard are specifically hereinbefore set forth. What is the effect of decedent's own conduct or possible contributory negligence? Contributory negligence was defined in a similar context as follows:

Generally, it has been said that contributory negligence is the neglect of the duty imposed upon a person to exercise ordinary care for his own protection and safety which is a legally contributing cause of an injury. [Footnote omitted.] In determining whether an injured person has been guilty of contributory negligence the standard of conduct to which he must conform is that of a reasonably prudent person under the circumstances. If a person by his own action subjects himself unnecessarily to danger which should have been anticipated and is injured thereby he is guilty of contributory negligence. Mroz v. Dravo Corporation, *supra*, 429 F.2d at 1163.

Contributory negligence, like negligence, can be thus divided into its constituent elements, each of which must be found before contributory negligence can be said to exist. These elements are:

(1) An act (or omission)

(2) A duty to so act (or refrain)

(3) A breach of said duty

(4) Actual causation ("cause in fact")

(5) Legal causation ("proximate cause")

(6) Injury or damage.

Examining these elements can be useful in determining which, if any, of the actions of decedent can be characterized as contributory negligence.

Defendant contends that at least the following circumstances constituted contributory negligence on the part of decedent: *first,* his failure to list a history of asthma and his treatment therefor when he took his pre-sign-on physical examination; *second,* his allegedly excessive and proscribed use of an asthma inhaler containing Isorpoteronol or Isopropyl drugs; and *third,* his own activity and failure to complain or seek competent medical attention.

### A. *Failure to State History of Asthma*

Defendant argues that decedent was contributorily negligent in not revealing his past history of asthma affliction and treatment at the time he received his pre-sign-on physical examination. Plaintiff's response is that decedent need not have revealed such condition since it had not been work disabling for the 15 years previous and that, in any event, such dereliction was not the proximate cause of his eventual death.

Examining defendant's claim against the elements required to prove contributory negligence, it will be seen that the main issues concern the existence of a duty (and hence whether there could be a breach thereof) and the existence of causation, whether actual or legal.

The duty question asks whether decedent was obligated to reveal what he knew about his asthmatic condition and past treatment therefor at the time he was physically examined. Some guidance appears from a line of cases dealing with such failures where a claim is made for maintenance and cure (rather than for damages). The general position was stated in McCorpen v. Central Gulf Steamship Corporation, *supra*, 396 F.2d at 548–549:

Maintenance may be awarded by courts even where the seaman has suf-

4. Of course the action for maintenance, unlike that for negligence, does not require a showing of fault. Evans v. Blidberg

Rothchild Company, 382 F.2d 637, 639 (4th Cir. 1967).

fered from an illness pre-existing his employment, but there is a general principle that it will be denied where he knowingly or fraudulently conceals his illness from the shipowner. [Citations omitted.]

\* \* \* \* \* \*

On the other hand, where the shipowner requires a seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts [no maintenance and cure will be awarded].

In *McCorpen* the plaintiff seaman had had diabetes for 20 years while working as a seaman. He underwent a physical examination before the voyage and was found fit, as he did not reveal that he had suffered from diabetes. The court of appeals affirmed the decision of the lower court in favor of defendant because of plaintiff's failure to disclose his previous condition. *See also* Tawada v. United States, 162 F.2d 615, 617 (9th Cir. 1947); Lindquist v. Dilkes, 127 F.2d 21, 23–24 (3d Cir. 1941) (their relationship imposes a duty on the seaman to reveal any material pre-existing condition to his captain); Milton v. Pure Oil Company, 165 F.Supp. 635, 637 (E.D.Va.1958), aff'd 264 F.2d 892 (4th Cir. 1959).

■ Subsequent cases have recognized that this duty of disclosure (or non-concealment) is not absolute and boundless. The seaman need not reveal every possible physical infirmity, no matter how minor or how dormant. Rather, the test is whether the seaman, in good faith, believed himself fit for duty when he signed aboard for duty. Burkert v. Weyerhaeuser Steamship Company, 350 F.2d 826, 831 (9th Cir. 1965); Blouin v. American Export Isbrandtsen Lines, Inc., 319 F.Supp. 1150, 1155 (S.D.N.Y.1970). In *Burkert,* the Ninth Circuit circumscribed the broad statement requiring full disclosure which it had seemed to suggest in the *Tawada* case:

> The decision in Tawada merely holds that a seaman who, knowing that he is afflicted with a disabling disease, conceals that fact and holds himself out as fit for duty, is not entitled to maintenance and cure. The decision, quite clearly, does not hold that a seaman who has a good faith belief that he is fit for duty must disclose a *pre-existing history* of disease concerning which no inquiry is made. 350 F. 2d at 829.

■ Thus this court is faced with the task of evaluating decedent's subjective intent: did he know or believe that his asthma was disabling or would render him unfit for sea duty? The fact that the condition had not been work disabling for 15 years previous to his signing on cuts in plaintiff's favor; the fact that inquiry was made about such condition and was met with a negative reply, however, cuts against him. On sum, the court concludes that decedent did breach his duty of nonconcealment within the meaning of the *Burkert* case.

■ Finding that decedent was under a duty to disclose his condition and breached that duty, the second question is whether that breach was a proximate cause of his injuries and death. The mere existence and nondisclosure of a pre-existing disability does not of itself amount to contributory negligence; there must be a causal link between such failure and the harm eventually incurred. *See* McCorpen v. Central Gulf Steamship Corporation, *supra*, 396 F.2d at 549; Sizemore v. United States Lines Co. T. Hogan Corp., 213 F.Supp. 76, 83 (E.D.Pa.1962), aff'd 323 F.2d 774 (3d Cir. 1963).

■ Plaintiff contends that decedent died from an unrelated cause (pneumonia or a similar malady) and that, presumably, his failure to reveal his asthma was irrelevant. This position is not supported in fact or in law. Had decedent revealed his condition defendant could have made provisions to protect itself by assigning decedent different duties or not hiring him at all. It is clear that but for decedent's asthma he would not have died when and as he did.

### B. *Use of Aerosol Inhaler Spray*

Defendant's main affirmative defense is that decedent was contributorily negligent in using excessive and proscribed amounts of an asthma aerosol inhaler spray which he purchased in Japan. Defendant claims this was the sole cause of decedent's death. Dr. Feingold, who had treated decedent previously and who was called by defendant as an expert witness, testified that the aerosol inhalers found among decedent's effects at his death were never prescribed or permitted by him or his staff. The two inhalers found with decedent were empty (indicating approximately 50 doses of each had been used or lost) and there was proof that decedent had in fact been using such inhalers up to and near the time of his death. The medical experts called by plaintiff had never examined decedent and could only testify hypothetically, although even they admitted that excessive doses of the inhaler spray could be dangerous.

Plaintiff's position is that decedent's use (or degree or time of use) of the inhalers was not proved, and that even if he had used them they did not cause (or at least were not solely responsible) for his death. Plaintiff's medical experts testified that decedent had pre-existing asthma which was aggravated by the engineroom's conditions and physical stress to which decedent was subjected. Plaintiff negates the theory of sudden death by inhaler overdose by pointing to the facts that the proof was that decedent's worsening was gradual, not sudden, and that he did not and could not have been using the inhalers in the period immediately preceding his death.

Plaintiff argues further that decedent was acting normally and properly in replenishing his supply of inhaler spray when he arrived in Japan and had difficulty breathing. The medicine had aided him in the past and so he was utilizing it again. There was no direct proof as to how much spray decedent did use, or at which precise intervals, although Mr. Hendricks stated in his deposition that he had seen decedent use the spray throughout Voyage 8.

Although the evidence is again in conflict, it seems unlikely that decedent died *solely* from the use of the aerosol inhaler. However, it was manifestly a contributing cause.

### C. *Failure to Complain*

Defendant's last assertion of contributory negligence rests upon decedent's failure to complain of his condition or seek out medical treatment. No broad rule can be stated here. A seaman is not expected or required to complain and is not contributorily negligent for failing to report obvious physical disabilities. On the other hand, it is reasonable that the seaman report any non-obvious problems, and a shipowner is not necessarily negligent for not hospitalizing a seaman with a common cold or cough.

Cases in this area turn on their particular facts and thus offer little help. It has been found that a seaman was contributorily negligent when he continued to work in a place or under conditions which he knew to be unsafe (at least where complaint would have afforded relief), Mroz v. Dravo Corporation, *supra*, 429 F.2d at 1164; DuBose v. Matson Navigation Company, 403 F.2d 875, 879 (9th Cir. 1968), although a seaman need not complain of his orders:

> He was in no sense obligated to protest against the method of operation which he had been instructed to follow or to devise a safer method, nor was he obligated to call for additional or different equipment. Ballwanz v. Isthmian Lines, Inc., 319 F.2d at 457, 462 (4th Cir. 1963), cert. den., 376 U.S. 970, 84 S.Ct. 1136, 12 L.Ed.2d 84 (1964).

The cases cited by defendant do note that the injured seamen therein failed to complain, but the results in those cases are not dispositive here and appear to rest instead on a failure to find a causative link between defendant's conduct (or omission) and plaintiff's

harm. See Potter Title & Trust Co. v. Ohio Barge Line, 184 F.2d 432, 434 (3d Cir. 1950), cert. den., 340 U.S. 955, 71 S.Ct. 567, 95 L.Ed. 689 (1951); Willey v. Alaska Packers' Ass'n, 18 F.2d 8, 11 (9th Cir. 1917).

 Here, however, although decedent need not have complained about his working conditions, he alone knew about his asthma condition and should have either brought that fact to the attention of his superiors or sought out medical aid at Sasebo. His failure to take either of these reasonable steps in his own behalf amounted to negligence.

### D. Effect of Contributory Negligence

 Although the court finds that each of the above circumstances amounted to contributory negligence on the part of decedent, it is well settled in admiralty law that such negligence is not a complete bar to plaintiff's recovery, but results only in mitigation of damages. Palermo v. Luckenbach Steamship Co., Inc., 355 U.S. 20, 21, 78 S.Ct. 1, 2 L.Ed.2d 3 (1957), order amended and remanded, 355 U.S. 910, 78 S.Ct. 337, 2 L.Ed.2d 271 (1958); Socony-Vacuum Co. v. Smith, 305 U.S. 424, 431, 59 S.Ct. 262, 83 L.Ed. 265 (1939); DuBose v. Matson Navigation Company, supra, 403 F.2d at 878. Similarly, assumption of risk is not an available defense to bar damages here. Socony-Vacuum v. Smith, supra, 305 U.S. at 431, 59 S.Ct. 262; DuBose v. Matson Navigation Company, supra, 403 F.2d at 877; Hudson Waterways Corporation v. Schneider, supra, 365 F.2d at 1015 (9th Cir. 1966).

### IV

### Conclusions of Law

1. This court has jurisdiction pursuant to 28 U.S.C. § 1333, the Public Vessels Act, 46 U.S.C. § 781 et seq., and the Suits in Admiralty Act, 46 U.S.C. § 741 et seq.

2. Defendant was under a duty to supply plaintiff's husband, the decedent Francis David Curry, with a seaworthy vessel.

3. Defendant was under a duty to use reasonable care to supply plaintiff's husband, decedent Francis David Curry, with a reasonably safe place to work and with reasonably adequate help to do his required work aboard the ship.

4. Defendant's vessel, the SS COUNCIL BLUFFS VICTORY, during decedent's service aboard said ship, was unseaworthy in that the vessel and her appurtenances and engine department personnel were not reasonably fit or adequate for the purposes intended.

5. Defendant was also negligent in failing to exercise reasonable care to supply plaintiff's husband, decedent Francis David Curry, with reasonably safe equipment, reasonably adequate and competent help and a reasonably safe place to work aboard said ship.

 6. Defendant's negligence and the unseaworthiness of the defendant's vessel directly worsened decedent's respiratory condition and substantially contributed to his death.

 7. Decedent Francis David Curry was guilty of contributory negligence which substantially contributed to his death.

Said contributory negligence was a proximate cause of his death and contributed to the consequent damages suffered by plaintiff to the extent of 50%, or one-half, thereof.

8. That the said negligence of defendant and/or the unseaworthiness of the vessel contributed 50%, or one-half, to the death of said decedent Francis Curry and to the consequent damages suffered by plaintiff.

9. Plaintiff is entitled to an interlocutory judgment herein with respect to and determining the liability of the defendant.

The defendant is hereby directed to submit its brief with respect to the proper measure of damages herein, in accordance with the findings and conclusions of this memorandum, on or before 30 days from the date of the filing of this memorandum, or until such date as defendant may request and be grant-

ed. Plaintiff is hereby directed to submit any supplementary or response brief on or before 15 days from the date on which defendant's brief on damages is filed with the court. The court will arrange for oral argument to be taken thereafter on the question of damages.

Let an interlocutory judgment and decree be entered accordingly, reserving for final determination the ultimate award of damages in favor of plaintiff and against defendant as may hereafter be determined by the Court.

Counsel for plaintiff is directed to prepare and present a form of decree in conformity herewith.